429 So.2d 492 (1983)
John A. STROUD, Plaintiff-Appellee,
v.
LIBERTY MUTUAL INSURANCE COMPANY, et al.,
Defendants-Appellees-Appellants.
No. 82-371.
Court of Appeal of Louisiana, Third Circuit.
March 9, 1983.
Rehearing Denied April 27, 1983.
*493 Bolen & Erwin, James A. Bolen, Jr., and Charles Munsterman, Alexandria, for defendants-appellants.
Thomas, Dunahoe & Gregory, A.J. Gregory and Gerard F. Thomas, Jr., Natchitoches, Norris Dale Jackson, Jena, for plaintiff-appellee.
Watson, Murchison, Crews, Arthur & Corkern, Ronald E. Corkern, Jr., Brittain & Williams, Joe Payne Williams, Natchitoches, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and LABORDE, JJ.
DOMENGEAUX, Judge.
John A. Stroud filed this suit in tort for recovery of damages allegedly sustained by him in an automobile accident on May 4, 1979, on La. Hwy. 6, near Natchitoches, Louisiana. At approximately noon, the plaintiff, pursuant to his duties as a traveling salesman for John Morrell Company, was driving westbound on La. Hwy. 6 at about 45 to 50 miles per hour. Approaching in the eastbound lane was a vehicle being driven by Bettye Cabra, which had slowed down in order to make a left hand turn. Suddenly, the Cabra automobile was struck in the rear by a car being driven by Shirley Reams. The collision propelled the Cabra vehicle into the westbound lane of La. Hwy. 6 where it struck the appellee's automobile.
After the impact, Stroud was able to remove himself from the automobile without assistance. He was able to walk around at the scene of the accident, and did not need to go to the hospital in an ambulance. Rather, he rode with an investigating state trooper to the local sheriff's office where his daughter subsequently picked him up and drove him home.
Later, however, he began to have pains in his neck, back, and legs. He thereafter made numerous visits to his doctor for relief of his discomforts. He was allowed to return to his job, but eventually he was medically retired on March 10, 1980, by virtue of a request made by his physician.
Named as defendants in the suit were (1) Bettye S. Cabra, (2) General Accident Fire & Life Assurance Corporation (General Accident), Bettye S. Cabra's automobile liability insurer, (3) Shirley B. Reams, (4) National General Insurance Company (National General), Shirley B. Reams' automobile liability insurer, and (5) Liberty Mutual Insurance Company (Liberty Mutual), the alleged *494 uninsured motorist carrier for John Stroud.[1] Liberty Mutual subsequently filed third party claims against Bettye Cabra, General Accident, Shirley Reams, and National General. Liberty Mutual also filed an intervention against the plaintiff and the other defendants seeking to recover for worker's compensation payments it had made to the plaintiff, consisting of $423.00 in weekly compensation benefits and $2,722.39 in medical expenses.
Subsequently, the plaintiff settled his claim against Shirley Reams and National General, executing a release from liability to them in exchange for a $40,000.00 payment. The trial court thereafter rendered judgment dismissing National General and Shirley Reams from the suit filed by John Stroud.
Shirley Reams and National General then filed an exception of no cause of action and a motion for summary judgment to the third party demand and intervention of Liberty Mutual. Bettye Cabra and General Accident also filed an exception of no cause of action and a motion for summary judgment to the third party claim of Liberty Mutual. Shortly thereafter, John Stroud filed a motion to dismiss Bettye S. Cabra and General Accident from all claims filed by him, which motion was granted by the trial judge. The trial judge rendered judgment in favor of Shirley Reams, National General, Bettye Cabra, and General Accident on their exceptions and motions for summary judgment against Liberty Mutual. Liberty Mutual appealed these rulings, and also sought a continuance of the trial in order to permit this Court to rule on its appeal. The motion was denied by the trial judge.
This case was tried before a twelve member jury. It rendered a verdict in favor of John Stroud and against Liberty Mutual in the amount of $204,700.00 with legal interest, less a credit of $50,000.00 as a result of the payment made by Shirley Reams and National General.[2] The trial judge also sustained both a motion for directed verdict filed by the plaintiff on the issue of whether Liberty Mutual's policy provided underinsured or uninsured motorist coverage, as well as a motion for directed verdict filed by Bettye Cabra and General Accident in reference to the fault of Bettye Cabra. Thereby, judgment was rendered in favor of Bettye Cabra and General Accident on the intervention of Liberty Mutual. Expert fees were taxed to Liberty Mutual as costs. However, no judgment was ever rendered by the district court on Liberty Mutual's intervention against John A. Stroud.
Liberty Mutual suspensively and devolutively appealed from the jury verdict and judgments of the trial court.
John A. Stroud answered the appeal, seeking to have the trial court judgment modified to increase the amount of damages awarded from $204,700.00 to $400,000.00.
Liberty Mutual alleges numerous errors which it claimed were committed in the trial court. Among these allegations, it claims:
(1) That the trial court erred in ruling as a matter of law that Liberty Mutual had provided uninsured motorist coverage on the vehicle driven by John Stroud.
(2) That the trial court erred in granting judgments in favor of the third party defendants with respect to Liberty Mutual's third party demands and intervention claims.
(3) That the trial court erred in failing to credit against the judgment rendered amounts paid by Liberty Mutual to John Stroud in worker's compensation benefits. *495 (4) That the trial judge improperly instructed the jury on certain points of law applicable to the case and also failed to give certain instructions requested by Liberty Mutual.
(5) That the trial judge erred in denying Liberty Mutual's motion for a continuance, commenting on the facts and evidence in the presence of the jury, refusing to allow Liberty Mutual to question jurors on the law applicable to the case, and ruling on the issue of uninsured motorist coverage without considering all of the evidence presented.
(6) That the jury abused its discretion in assessing the damages sustained by John Stroud.
(7) That the trial judge erred in awarding legal interest on the judgment from the date of judicial demand rather than from the date judgment was rendered.
We will consider each of the assignments of error separately.

ERROR NO. 1
Liberty Mutual argues that it had not provided uninsured motorist coverage on the vehicle driven by John Stroud since such coverage had been expressly rejected in writing by a representative of John Morrell Company, the plaintiff's employer. He cites a letter written on August 16, 1973, by W.J. Dodd, who was in charge of procuring insurance for John Morrell Company, to Liberty Mutual's account executive, Robert O'Connor. That letter provided in pertinent part:
"This letter will confirm our intention of purchasing uninsured motorist coverage only in those states where we are required by law to do so."
This letter was not attached to the policy in question, however Liberty Mutual maintains that it constitutes rejection of uninsured motorist coverage by virtue of the provisions of La.R.S. 22:1406(D)(1)(a) as amended by Act 438 of 1977. That provision states:
"No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto." (Emphasis added).
The plaintiff, on the other hand, maintains that since the letter was written prior to September 9, 1977, the effective date of Act 438 of 1977, that the provisions of La. R.S. 22:628 governed. That section provides in pertinent part:
"No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance."
*496 We agree with the plaintiff. This issue was squarely confronted in Jordan v. Honea, 407 So.2d 503 (La.App. 1st Cir.1981), where the Court stated:
"The version of LSA-R.S. 22:1406(D) which was in effect earlier contained no formal requirements for rejection. Hence, prior to September 9, 1977, the effective date of Act No. 438 of 1977, which amended LSA-R.S. 22:1406(D), rejection of UM coverage had to be in writing and physically attached to the policy, as was provided in the general requirements of R.S. 22:628."
Furthermore, that case held that a written rejection submitted prior to the issuance of the policy on September 30, 1976, which was almost identical to the one in the case at hand, was ineffective as a rejection of uninsured motorist coverage, since such rejection was not attached to the policy.
The letter rejecting uninsured motorist coverage in the case at bar was written a long time prior to the effective date of Act 438 of 1977. It was never effective as a rejection of uninsured motorist coverage on the policy originally issued to John Morrell Company since it was never attached to such previous policy. It is thereby ineffective to constitute a rejection of uninsured motorist coverage in the policy in question, as well.

ERROR NO. 2
Liberty Mutual claims that the trial court erred in sustaining motions for summary judgment and exceptions of no cause of action filed by Shirley Reams and National General in response to the third party demand and intervention of Liberty Mutual, and filed by Bettye Cabra and General Accident in reference to the third party action of Liberty Mutual. During the course of the trial proceedings the district judge sustained a motion for directed verdict filed by Bettye Cabra and General Accident, holding that Bettye Cabra was not at fault in the accident in question, and thereby absolving both parties from liability on the intervention of Liberty Mutual.
In the trial judge's reasons for dismissing Shirley Reams, National General, Bettye Cabra, and General Accident from the third party demands of Liberty Mutual, he stated:
"Mrs. Cabra has been released by the plaintiff, by being dismissed from the law suit with prejudice. Therefore, the plaintiff, Stroud, has nothing to subrogate Liberty Mutual to. The defendant, Reams, has been dismissed by release and dismissal of the law suit, after paying $40,000.00 to the plaintiflf, Stroud. Therefore, Stroud has nothing to subrogate Liberty Mutual to."
The provisions of the uninsured motorist statute allow an insurer who makes payment under its uninsured motorist coverage to be entitled to reimbursement to the extent of such payment from the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of its insured against any party legally responsible for the bodily injury for which such payment is made. La.R.S. 22:1406(D)(4).
In Bond v. Commercial Union Assurance Company, 407 So.2d 401 (on Rehearing, La. 1981), the Supreme Court assessed this statute in light of the fact that it does not specify whether the insurer who makes payment is subrogated to the insured's action against the tortfeasor. The court ultimately determined that the Civil Code provisions on subrogation were in accord with the purposes of the uninsured motorist statute and thereby allowed the insurer to avail himself of the remedy of subrogation.
However, in the recent case of Pace v. Cage, 419 So.2d 443 (La.1982), the Supreme Court held that where the insured had completely discharged the tortfeasor from any obligation to him in return for a cash payment of $5,000.00 before the uninsured motorist carrier had made any payment to the insured, that the insured had no rights against his former debtor to subrogate to the insurer. The court thereby affirmed the lower court's decision, sustaining an exception of no cause of action filed by the third party defendants against the insurer.
*497 We find the Pace decision squarely on point with the facts of the case at bar. Shirley Reams, National General, Bettye Cabra, and General Accident were all released by John Stroud before Liberty Mutual ever made any payments to Stroud under the uninsured motorist provisions of its insurance policy. Thus, Stroud no longer had any rights to which Liberty Mutual could be subrogated.
Likewise, it is our opinion that the interventions of Liberty Mutual against Shirley Reams, National General, Bettye Cabra, and General Accident were properly dismissed. Shirley Reams and National General had been dismissed from the law suit by judgment on August 20, 1980, some nine days prior to the filing of Liberty Mutual's intervention on August 29, 1980. Thus, there was no "pending action" between these two defendants and the plaintiff at the time that the intervention was filed by Liberty Mutual, and it was thereby properly dismissed by the trial judge. La.C. C.P. Article 1091.
Insofar as the intervention of Liberty Mutual against Bettye Cabra and General Accident is concerned, we have been presented with no scintilla of evidence, jurisprudence, or argumentation on appeal which in any way demonstrates that the district judge improperly directed a verdict in favor of Bettye Cabra and General Accident on this issue. This being the case, we have no choice but to affirm the decision of the trial judge to sustain the motion for directed verdict granted in favor of these defendants.

ERROR NO. 3
Liberty Mutual claims that the district court should have credited against the judgment rendered amounts that it paid to John Stroud in worker's compensation benefits.[3] It claims that by the failure of the trial court to do this, that not only has John Stroud been allowed double recovery for the same alleged injuries, but also that it has been subjected to double liability since it is both the worker's compensation carrier and the uninsured motorist carrier for John Morrell Company, the plaintiff's employer.
The plaintiff, on the other hand, contends that this issue has been squarely confronted in the jurisprudence, and that it has been consistently held that an uninsured motorist carrier is not the type of "third person" from whom a worker's compensation insurer can recover under the provisions of La. 23:1101.[4]Lute v. City of Lake Charles, 394 So.2d 736 (La.App. 3rd Cir.1981); Gentry v. Pugh, 362 So.2d 1154 (La.App. 2nd Cir. 1978).
However, the Supreme Court has just recently rendered a decision which we must apply to the case at hand. In Johnson v. *498 Fireman's Fund Insurance Company, 425 So.2d 224 (Supreme Court 1982), the Court held:
"An uninsured motorist carrier is a third person legally liable to pay damages to an injured employee protected by its coverage because it is obliged by law and the issuance of its policy to repair the same damage which the tortfeasor has caused and to guarantee recovery as if the tortfeasor had been insured. Therefore, a worker compensation insurer can recover amounts paid to an injured employee out of uninsured motorist coverage. La.R.S. 23:1101. However, this is subject to one limitation. Worker compensation insurers cannot recover out of uninsured motorist coverage paid for by an employee because the worker compensation statute prohibits direct or indirect imposition of the cost of compensation upon an employee. La.R.S. 23:1163."
The Court determined that the Lute and Gentry decisions represented an unduly restrictive interpretation of the phrase "third person" as contemplated in La.R.S. 23:1101, and thus it chose to derogate from the views taken by the Courts of Appeal. We are thus compelled to accept the Supreme Court's interpretation and to apply it accordingly.
Since Liberty Mutual was the uninsured motorist carrier for John Morrell Company, John Stroud's employer, we must hold that the trial court erred in denying Liberty Mutual credit for worker's compensation payments it had previously made to the plaintiff. The payments made by Liberty Mutual, consisting of $423.00 in weekly compensation benefits and $2,722.39 in medical expenses must thereby be deducted from any amount for which Liberty Mutual is ultimately cast in judgment.

ERROR NO. 4
The appellant argues here that the trial judge improperly instructed the jury on certain points of law applicable to the case and also refused to give certain instructions requested by Liberty Mutual. Because of this, the appellant contends that the judge caused tremendous prejudice to the appellant before the jury.
Counsel for Liberty Mutual apparently chose not to object to the court's failure to give certain instructions or to object to the charges given by the trial judge until after the jury had retired to consider its verdict. In so doing, it waived its rights to object by the clear wording of La.C.C.P. Article 1793, which provides:
"A party may not assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."
Thus its allegation of error in this regard is without merit, due to its failure to put forth a timely objection.

ERROR NO. 5
Here, Liberty Mutual initially avers that the trial judge erred in denying Liberty Mutual's motion for a continuance. Appellant's motion was made after it appealed the judgment of the trial court sustaining the motions for summary judgment and exceptions of no cause of action propounded by the other four defendants in the law suit. Appellant claims that the trial court's failure to grant a continuance pending the appeal constituted an abuse of discretion.
This Court has held that the matter of granting a continuance in order to apply for writs to an appellate court is within the sound discretion of the trial judge. Helaire v. Liberty Mutual Insurance Company, 397 So.2d 8 (La.App. 3rd Cir.1981). We have reviewed the record and have concluded that the trial judge's denial of the motion to continue did not constitute an abuse of his sound discretion.
Appellant next contends that the trial judge erred in refusing to allow Liberty Mutual to question jurors on the law applicable to the case and that the judge erred in commenting on the facts and evidence in the presence of the jury. It claims that *499 these actions were highly prejudicial to it and thereby constituted reversible error.
We have carefully reviewed the record on these issues. We are unable to conclude that the comments made by the trial judge warrant a reversal. At best, these comments and actions merely constituted harmless error under the circumstances of the case.
Finally, the appellant maintains that the trial judge erred in directing a verdict in favor of the plaintiff on the issue of uninsured motorist coverage without first reading and considering the depositions of W.J. Dodd and Robert O'Connor concerning the intent of the plaintiff's employer to waive such coverage in its policy. Although the depositions were admitted into evidence, appellant claims that the failure of the trial judge to consider them prior to ruling on the directed verdict constituted reversible error.
We have already reviewed this evidence and concluded that the trial judge did correctly direct a verdict in favor of the plaintiff (see supra). Once again, we are of the opinion that the failure of the judge to consider these depositions under the circumstances of this case merely constituted harmless error.

ERROR NO. 6
The jury awarded John A. Stroud $204,700.00 based upon the injuries he allegedly sustained in the accident, as well as his loss of past and future wages. Liberty Mutual argues on appeal that this award constituted a clear abuse of discretion and should thereby be reduced accordingly. The plaintiff, on the other hand, avers that the jury award was too low under the circumstances of this case, and seeks to have it increased to $400,000.00.
The record establishes that at the time of the accident, John Stroud was nearly 55 years old. He had worked as a traveling salesman for John Morrell Company for nearly 27 years, requiring him to drive some 1500 to 2500 miles per week, calling on retail and wholesale grocery outlets in order to sell meat products. He was often required to work at store openings, and was called upon to lift boxes of beef weighing 50 to 90 lbs.
Stroud first visited Dr. L.R. Collier some four days after the accident. The doctor found muscle spasms both in the neck and in the lower back, or lumbar spine area. However, he also found evidence of arthritis in the lumbar spine, shoulder joints, and neck, which the doctor testified could have caused the symptoms Stroud complained of. He began treating Stroud with muscle relaxants, pain medication, anti-inflamatory drugs, and injections.
Doctor Collier examined Stroud on 31 different occasions between the date of the accident and the trial. He allowed Stroud to return to work on a trial basis approximately a month after the accident, since the plaintiff was quite anxious to work again and requested the doctor to allow him to do so. However, Stroud's wife did most of the driving for him after the accident, and he worked intermittently thereafter. On March 10, 1980, pursuant to a letter submitted by Doctor Collier to John Morrell Company, the plaintiff was medically retired from his job.
John Stroud continued to complain of neck and back pains on a majority of his visits to Doctor Collier, which were normally confirmed upon the doctor's examination of the patient. Doctor Collier recommended at one point that Mr. Stroud be examined by several specialists in Houston. Subsequently, Mr. Stroud did visit Houston for such examination, where he was treated by Dr. John J. McCutcheon, an expert in neurology. Upon completion of tests on the plaintiff, Doctor McCutcheon concluded that the accident was probably an aggravating event which caused the symptoms for which he was being treated, and that Mr. Stroud was permanently disabled from performing his duties as a traveling salesman.
Dr. Lavonia J. Casperson, an economist from Louisiana State University, testified as to Mr. Stroud's past and future lost wages. Based upon a work life expectancy *500 of 10.9 years, she estimated that his future lost wages totalled $190,328.95, which coupled with his estimated past lost wages of $33,449.01, totalled $223,777.96. She based these figures on conservative estimates of the inflation rate, productivity rate, and discount rate.
In McElroy v. Vest, 407 So.2d 25 (La.App. 3rd Cir.1982), this Court delineated the principles of appellate review of quantum:
"The principles of review governing this issue are well settled. First, to modify the amount of an award for general damages, an appellate court must find that the trial judge or jury abused the much discretion accorded by LSA-C.C. Article 1934. Second, the awards in other cases serve only as an aid in determining whether there has been an abuse of discretion. They provide no frame of uniformity..... A reviewing court might well disagree with the amount of the award fixed by the jury, but cannot on that basis alone substitute its opinion for that of the trier of fact..... An award which is so excessive that it constitutes an abuse of the jury's discretion should be reduced to the highest point which is reasonably within that discretion...." (Citations omitted).
We have carefully reviewed the record and are unable to conclude that the jury's determination constituted an abuse of discretion. Therefore, we deem it improper to either increase or decrease the award given, and thus adhere to the jury's findings.

ERROR NO. 7
Liberty Mutual contends that the trial court erred in granting John Stroud legal interest on the damages awarded to him "... from the date of judicial demand until paid..." It argues that an uninsured motorist carrier's liability arises ex contractu rather than ex delicto, and thus that legal interest can only begin to run from the date of judgment against such an insurer, citing this Court's opinion in Guidroz v. Tauzin, 413 So.2d 682 (La.App. 3rd Cir.1982) as authority.
In Guidroz, this Court determined that the plaintiff's action against her own uninsured motorist carrier was a claim sounding in contract rather than in tort. Since debts arising ex contractu are recoverable only from the time such debts become due while legal interest attaches on judgments ex delicto from the date of judicial demand, we concluded that legal interest could be accrued only from the date of judgment.
Cited as authority in that case was the opinion of the Supreme Court in Booth v. Fireman's Fund Insurance Company, 253 La. 521, 218 So.2d 580 (La.1968). In Booth, the Supreme Court was confronted with the issue of whether an action brought by an insured against his own uninsured motorist carrier was one in contract or tort for purposes of prescription. In concluding that the plaintiff's action was one in contract, the Court stated:
"The obligation of the uninsured motorist is not the obligation of the insurer under its insurance contract, and the tort feasor's right to claim extinguishment of the tort obligation through a plea of prescription does not inure to the benefit of the insurer. The ex delicto prescriptive period is personal to the tort feasor and those who derive their status from him."
In Powell v. Allstate Insurance Company, 233 So.2d 38 (La.App. 2nd Cir.1970), the Court cited Booth as authority for the proposition that an uninsured motorist carrier is liable only in contract to the insured and not in solido as a joint tortfeasor. See also Hoefly v. Government Employees Insurance Company, 403 So.2d 853 (La.App. 2nd Cir. 1981). Each of these cases were cited as authority for the ruling set forth in Guidroz, supra.
However, the recent decision of the Supreme Court in Johnson v. Fireman's Fund Insurance Company, supra, seems to indicate a shift in the Court's view of the nature of an uninsured motorist carrier's liability to its insured. The majority states in that opinion:
"Although uninsured motorist coverage is provided for the protection of persons injured by uninsured or underinsured *501 tortfeasors, and not for the benefit of such wrongdoers, the stautorily [sic] specified coverage guarantees the injured person's recovery of damages as if the tortfeasor had been insured.... Subject to conditions not granted the tortfeasor, the uninsured motorist carrier is independently obliged to repair the same damage which the tortfeasor has wrongfully caused. By effect of law and the delivery or issuance for delivery of automobile liability insurance, both the uninsured motorist carrier and the tortfeasor are obliged to the same thing..... The fact that the uninsured motorist carrier is bound by the combined effect of the tortfeasor's wrongful act, the uninsured motorist statute, and the carrier's delivery or issuance for delivery of automobile liability insurance, while the tortfeasor is obliged merely because of his delict, does not prevent them from being obliged to the same thing. An obligation may be in solido, requiring that the obligors be obliged to the same thing, even though the obligations of the obligors arise from separate acts or by different reasons...." [Citations omitted]
It appears to us that the Supreme Court now considers an uninsured motorist carrier to be statutorily bound to recompense for the claims of an injured party just as though it were the tortfeasor's insurer. Such insurer's liability, according to this decision, now seems to arise ex delicto rather than ex contractu. We note that the Louisiana Fifth Circuit Court of Appeal is in accord with our position as evidenced by an opinion handed down by that Court on January 10, 1983, entitled Michael Chiasson v. Roland Whitney, Jr., et al, 427 So.2d 470 (La.App. 5th Cir.1983).
While we might be inclined to differ with the reasoning of the Supreme Court in Johnson, we are compelled to heed its dictate. Thus, we can only conclude that Liberty Mutual's liability to the plaintiff arose as a result of the actions of the alleged tortfeasors in this suit, and that the trial judge properly awarded legal interest on the judgment from the date of judicial demand.

DECREE
For the above reasons, the district court judgment is amended so as to render judgment in favor of Liberty Mutual Insurance Company on its intervention against John A. Stroud such that worker's compensation payments made by Liberty Mutual Insurance Company, consisting of $423.00 in weekly compensation benefits and $2,722.39 in medical expenses be deducted from the award of damages granted by the district court. In all other respects the judgment of the district court is affirmed. All costs at trial are assessed against Liberty Mutual Insurance Company, while all costs on appeal are assessed eighty-five (85%) percent against Liberty Mutual Insurance Company and fifteen (15%) percent against John A. Stroud.
JUDGMENT AFFIRMED AS AMENDED.
GUIDRY, J., dissents in part and assigns reasons.
GUIDRY, Judge, dissenting in part.
I respectfully disagree with the opinion of the majority insofar as it allows legal interest on the amount of judgment against the uninsured motorist carrier, Liberty Mutual Insurance Company, from date of judicial demand. In my view, for the reasons fully stated in Guidroz v. Tauzin, 413 So.2d 682 (La.App. 3rd Cir.1982), an opinion which I authored, interest is owed by an uninsured motorist carrier to its insured only from date of judgment.
In the opinion of my colleagues, a result different from that reached by this court in Guidroz, supra, is dictated by the later decision of our Supreme Court in Hoefly v. Government Employees Insurance Company et al, 418 So.2d 575 (La.1982), and its progeny, specifically Johnson v. Fireman's Fund Insurance Co., 425 So.2d 224 (La.1982). Although I disagree with the reasoning and ultimate conclusion of the majority in Hoefly and Johnson, supra, as to the existence of solidarity as between the tortfeasor and *502 uninsured motorist carrier, I, like my esteemed brethren, yield to the force of those decisions. However, I do not believe that Hoefly and Johnson, supra, compel a conclusion different from that reached by this court in Guidroz.
Although in Hoefly and Johnson the Supreme Court concluded that the tortfeasor and uninsured motorist carrier were solidarily liable, being obliged to the same thing, in Hoefly, the court was careful to point out that the obligation of the uninsured motorist carrier was to repair the damage caused to the innocent victim "subject to statutory and policy conditions." The Hoefly court also observed that the obligation between the tortfeasor and the uninsured motorist carrier was solidary although arising from separate acts and for different reasons, i.e., the tortfeasor's obligation arising as a result of La.C.C. Art. 2315 and the uninsured motorist carrier's obligation arising as a result of its insuring agreement and the provisions of La.R.S. 22:1406(D)(1)(a).
As we stated in Guidroz, the issue as to whether a plaintiff-insured is entitled to judgment against his uninsured motorist carrier for legal interest from date of judgment or from date of judicial demand is resolved by determining what type of action the insured plaintiff has vis-a-vis the uninsured motorist carrier. It seems abundantly clear that such an action is one sounding in contract. Booth v. Fireman's Fund Insurance Company, 218 So.2d 580 (La.1968). The insuring agreement issued by Liberty Mutual provides for payment by the company of,

"all sums which the insured ... shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle...".
Liberty Mutual's obligation to perform under the terms of its contract, did not arise until there was a legal determination of the liability of the uninsured motorist and the extent of plaintiff's damages. La.C.C. Art. 1938, as last amended in 1981, provides that,

"All debts shall bear interest at the rate of 12% per annum from the time they become due, unless otherwise stipulated." Since, as stated in Hoefly, supra, the uninsured motorist carrier's responsibility to its insured is to repair the damage caused by the uninsured or under-insured motorist, subject to statutory conditions, and since the action is one in contract, it must necessarily follow that the uninsured motorist carrier's responsibility for legal interest stems from date of judgment, pursuant to the provisions of La.C.C. Art. 1938, and not from date of judicial demand pursuant to LSA-R.S. 13:4203. As stated by the court in Booth, supra:
"... The uninsured motorist provision is not insurance or indemnification for the uninsured motorist, and the insurer does not stand in the shoes of the uninsured motorist who is the tortfeasor."

Finally, I note that the Hoefly court was cautious to observe that all effects of solidarity would not necessarily apply in uninsured motorist cases. As stated by the court:
"Care should be taken by civilian attorneys and jurists to be on guard against applying one segment of the code in isolation from others. Neither the Civil Code nor the revised statutes were intended to be applied in this manner."
For these reasons, I respectfully dissent.
NOTES
[1] Two other parties, Security Industrial Insurance Company and the American Insurance Company, were dismissed from this suit by the trial court. They are not involved in this appeal.
[2] The plaintiff acknowledged prior to trial that since he had previously settled his claim with Shirley Reams and National General for an amount which was less than the $50,000.00 limit on the insurance policy in effect between these parties, that Liberty Mutual was entitled to a $50,000.00 credit on any judgment rendered against it.
[3] It should again be noted that this claim for recovery of compensated benefits paid by Liberty Mutual to John Stroud was propounded by Liberty Mutual via an intervention filed against all parties to the suit, including John A. Stroud. However, the district court only ruled on the intervention insofar as the other defendants were concerned, and never rendered judgment on the claim against the plaintiff. It is this particular claim that is being dealt with and ruled upon herein.
[4] La.R.S. 23:1101 provides:

"When an injury or compensable sickness or disease for which compensation is payable under this Chapter has occurred under circumstances creating in some person (in this Section referred to as third person) other than those persons against whom the said employee's rights and remedies are limited in Section 1032 of this Chapter, a legal liability to pay damages in respect thereto, the aforesaid employee or his dependents may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the said employee or his dependents, relations, or personal representatives against such third person, nor be regarded as establishing a measure of damages for the claim; and such employee or his dependents, relations, or personal representatives may obtain damages from or proceed at law against such third person to recover damages for the injury, or compensable sickness or disease.
Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to such employee or his dependents."