443 So.2d 723 (1983)
Wilbur SENTILLES and Stephen Sentilles
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. CA-0899.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1983.
Writ Denied February 10, 1984.
*724 John D. Lambert, Jr., Lambert & Lambert, New Orleans, for plaintiffs-appellants.
Adrianne L. Baumgartner, Porteous, Hainkel, Johnson & Sarpy, Covington, for defendant-appellee.
Before SCHOTT, BARRY and LOBRANO, JJ.
BARRY, Judge.
Both parties appeal a partial summary judgment which prohibited "stacking" uninsured motorist policies and voided plaintiff's selection of minimum uninsured motorist coverage.
On June 5, 1980, Stephen Sentilles was seriously injured when struck by a car while attempting to cross a street in Ft. Walton Beach, Florida. The vehicle was insured by Government Employees Ins. Co. with liability limits of $15,000. Alleging damages greatly in excess of that coverage, Stephen and his father, Wilbur Sentilles, sued State Farm Mutual Automobile Ins. Co., the father's uninsured/underinsured motorist carrier.
Plaintiffs alleged that at the time of the accident State Farm had in effect three insurance policies, each of which entitled plaintiffs to recover $5,000 U.M. policy limits. Subsequently the petition was amended to allege the coverage under each policy was $100,000 because the U.M. coverage forms executed by Mr. Sentilles in 1976 and 1980 were invalid and inapplicable when the accident occurred.
State Farm moved for partial summary judgment, contending plaintiffs are prohibited from stacking U.M. coverage and that the forms signed by Mr. Sentilles limited *725 U.M. coverage to $5,000 under each policy. After a hearing the trial court ruled:
Plaintiffs may not stack the three State Farm policies; the U.M. selection forms signed in 1976 were void thereby causing each policy to have U.M. limits of $100,000/$300,000, the same as the liability limits.
State Farm appeals as to the selection forms and plaintiffs appeal the stacking prohibition.
Mr. Sentilles has been insured by State Farm since October, 1972 when he covered a Buick and a Chrysler. That insurance continued until the cars were replaced with a Cadillac and a Mercury. On April 26, 1976, Mr. Sentilles signed two "Louisiana Uninsured Motor Vehicle Coverage" forms which declared:
In keeping with the provisions of the laws of the State of Louisiana I hereby request that the insurer designated below proceed as indicated as respects the policy of bodily injury liability insurance on the described motor vehicle, its replacements, and any subsequent transfer, reinstatement or renewal of such policy or policies to be issued. I understand that had I so desired it would have been possible for me to have purchased limits of liability for Uninsured Motor Vehicle Coverage equal to the Bodily Injury Liability limits designated on my application for insurance.
Mr. Sentilles marked the box on both forms designated "OPTION TO ELECT LOWER LIMITS OF LIABILITY FOR UNINSURED MOTOR VEHICLE COVERAGE. Provide Uninsured Motor Vehicle coverage under such policy with liability limits of 5,000/$10,000." It was stipulated that neither form was given back to Mr. Sentilles to be attached to the policies, nor were they attached to any subsequent policies (renewals, substitute or otherwise) issued to him by State Farm.
On January 24, 1977 Mr. Sentilles substituted a Cadillac for the Buick with the same coverage. On August 30, 1979, a Pontiac was substituted for the Cadillac with the same coverage plus collision coverage. Similarly, on February 1, 1977 a Mercury was substituted for the Chrysler with the same coverage. Mr. Sentilles never signed another U.M. selection form for any of the policy renewals or replacements.[1]
On May 23, 1980 State Farm issued another policy to Mr. Sentilles for a Pontiac, his third vehicle.[2] He signed a U.M. selection form identical to the other two forms which designated limits of $5,000/$10,000.
Thus, on the date of Stephen's accident, State Farm had three insurance policies on three automobiles owned by Mr. Sentilles. The "Declaration" page of each policy specified liability limits of $100,000/$300,000 and U.M. limits of $5,000/$10,000 covering Wilbur Sentilles and "any resident of the same household." It is undisputed that Stephen Sentilles lived with his father and was insured.

VALIDITY OF U.M. SELECTION FORMS
Plaintiff contends that U.M. limits of $100,000/$300,000 were statutorily read into the first two policies by operation of LSA-R.S. 22:1406(D), the portion of the Louisiana Insurance Code on U.M. coverage.
At all pertinent times R.S. 22:1406(D) specified U.M. coverage is to be provided in not less than the amounts of bodily injury liability coverage, unless the insured rejects such coverage or selects lower limits. The statutory requirements for a waiver or lower limits have been amended several times, notably in 1977. The two U.M. selection forms at issue were signed by Mr. Sentilles on April 26, 1976 when R.S. 22:1406(D) provided:
(1)(a) No automobile liability insurance covering liability arising out of the ownership, *726 maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer.... (Emphasis added)
LSA-R.S. 22:628, a general provision of our Insurance Code, in effect then and now, specifies:
"No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless in writing and made part of the policy." (Emphasis supplied.)
While the version of R.S. 22:1406(D)(1)(a) in effect when plaintiff signed the U.M. selection forms did not specifically require that such selection be both in writing and attached to the policy, the writing and attachment requirements of R.S. 22:628 were held applicable to R.S. 22:1406(D)(1)(a) in A.I.U. Ins. Co. v. Roberts, 404 So.2d 948 (La.1981). Our Supreme Court, after a thorough analysis of the history of R.S. 22:1406(D), declared:
[C]learly, prior to September 9, 1977, the effective date of Act 438 of 1977, any selection of lower limits, to be valid, had to be in writing and attached to the policy.
In 1977 R.S. 22:1406(D) was amended and the requirement that a waiver or selection of lower limits be attached to the policy was made inapplicable to "renewal or substitute policies."
Just as the two forms here, the attempted waiver/selection of lower coverage in A.I.U. Ins. Co. v. Roberts was made before the 1977 amendment to R.S. 22:1406(D), but the policy was issued or renewed after 1977, and the accident occurred after 1977.
The A.I.U. Ins. Co. case is closely analogous to the case sub judice. There our high court dealt with an attempted oral waiver of the statutory U.M. coverage made by the insured in 1975. The policy had been continuously renewed at 6-month intervals, the last renewal being made in June, 1978, a month before the accident. Although the policy renewal and accident in A.I.U. Ins. Co. occurred as here, after the 1977 amendments to R.S. 22:1406(D), the Court looked to the law in effect at the time of the attempted waiver of U.M. coverage. The Court held, at 404 So.2d 951-52:
It is of no moment that the policy in the instant case provided lower limits since the coverage was read into the policy by the terms of the statute. Since selection of lower limits conflicted with the coverage written into the policy [by] law, such selection was required to be in writing and attached to the policy. The oral waiver of uninsured motorist coverage was therefore invalid as being in in contravention of La.R.S. 22:628 notwithstanding the fact that the version of La. R.S. 22:1406 in effect at the time did not contain a writing requirement, [citations omitted.] Clearly, prior to September 9, 1977, the effective date of Act 438 of 1977, any selection of lower limits, to be valid, had to be in writing and attached to the policy.
In this case, the versions of R.S. 22:1406(D) and 22:628 in effect when plaintiff signed the U.M. selection forms in 1976 mandated the attachment of such written *727 waivers or selection forms to the insured's policy. State Farm admits the selection forms were not attached and were therefore invalid; nevertheless, it argues the later amendments to R.S. 22:1406 retroactively validated the 1976 selection forms and made them applicable to renewals of the policies after 1977.
State Farm relies on the provision in the 1977 amendment that "Any document signed by the named insured .... which initially rejects such coverage ... shall be conclusively presumed to become a part of the policy or contract when issued or delivered, irrespective of whether physically attached thereto." We do not construe the amendment as an effort to resucitate a waiver that was void ab initio when the waiver was signed. If, as State Farm urges, the policies in effect when the accident occurred were either renewals of/or substitutes for the prior policies, which admittedly provided for U.M. limits equal to the liability limits, there would be no "carryover" effect from the previously invalid waivers. Likewise, if the current policies are viewed as entirely new contracts, the U.M. limits would equal the liability coverage because the insured did not sign any additional selection forms applicable to the new policies. See Courville v. State Farm Mutual Automobile Ins. Co., 393 So.2d 703 (La.1980).
The same conclusion was reached by the Third Circuit in the recent case of Stroud v. Liberty Mutual Ins. Co., 429 So.2d 492 (La.App. 3d Cir.1983). The insured in Stroud had written a letter declining U.M. coverage in 1973. The letter was never attached to the original policies or to those in effect when the accident occurred in 1979, which were apparently replacements or renewals of the 1973 policies. The Court refused to apply the 1977 U.M. amendment retroactively, declaring at 429 So.2d 496:
The letter rejecting uninsured motorist coverage in the case at bar was written a long time prior to the effective date of Act 438 of 1977. It was never effective as a rejection of uninsured motorist coverage on the policy originally issued to John Morrel Company [the insured] since it was never attached to such previous policy. It is thereby ineffective to constitute a rejection of uninsured motorist coverage in the policy in question, as well.
The judgment of the trial court holding the U.M. coverage on the Pontiac and Mercury to be $100,000/$300,000 at the time of plaintiff's accident is therefore affirmed.

APPLICATION OF "STACKING"
LSA-R.S. 22:1406(D)(1)(c), in pertinent part, provides:
"(c) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:

"With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:

.."(i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;

.."(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant." (Emphasis added).
*728 This provision was added to the statute regulating U.M. coverage in order "to prohibit stacking except under certain designated circumstances." Courville v. State Farm Mutual Automobile Ins. Co., supra. In Courville, the court construed the above provision quite literally by holding it did not bar the injured son of the named insured, who was occupying a vehicle owned by his father, from recovering both the U.M. limits on the car in which he was injured and the U.M. limits on another car owned by the youth's father. Applying each of the statutory clauses as written, Courville held: (1) the injured boy was "occupying a vehicle not owned by said injured party"; (2) the U.M. coverage on the vehicle in which the boy was riding was primary (the fact that the "non-owned vehicle" belonged to the boy's father, the named insured, did not matter); and (3) since the primary coverage on the occupied vehicle was exhausted due to the severity of the boy's injuries, he could "recover as excess from other U.M. coverage available to him," in that case the U.M. coverage on his father's other car.
Courville, at page 705, explicitly recognized "the general rule that an insured who has insurance available to him under more than one uninsured motorist policy may not stack....", but found the plaintiff there to be within the single statutory exception to the anti-stacking provision of R.S. 22:1406(D)(1)(c). That exception was obviously intended to allow a party who is injured in another person's car to recover under both the U.M. limits on the car in which he was riding, and one other policy under which he is an insured (generally, a policy on his own car). Because the statutory exception of R.S. 22:1406(D)(1)(c) was drafted broadly enough to include the Courville situation, the Court there allowed the plaintiff to stack.
The instant situation does not fall within the statutory exception because Stephen Sentilles was a pedestrian. He was, therefore, obviously not "occupying an automobile not owned by said injured party," the first requisite to application of the anti-stacking exception. Furthermore, the designation of "priorities of recovery under U.M. coverage" in 22:1406(D)(1)(c)(i) and (ii) could not possibly refer to an injured pedestrian, since the definition of "primary" coverage is the coverage on the "vehicle in which the injured party was an occupant." By its own terms, the statutory exception limits "excess coverage" to "one uninsured motorist policy ... over and above the primary coverage available to the injured occupant." Therefore, this case falls within the anti-stacking prohibition of R.S. 22:1406(D)(1)(c).
Plaintiffs submit, alternatively, that even if our Insurance Code does not allow stacking, the specific policy language does:
"Subject to the above, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance, and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance." (Emphasis supplied.)
Plaintiffs argue the conjunction "and" instead of the disjunctive "or" in the phrase "the damages shall ... not ... exceed the higher of the applicable limits of this insurance and such other insurance" allows plaintiffs to add the U.M. limits of all available policies. We reject that interpretation because it disregards the phrase "the higher of" the applicable U.M. coverages, which is clearly intended to refer to whichever of the two or more applicable policies has greater limits.
Plaintiffs' argument was considered in Clement v. Continental Ins. Co., 430 So.2d 1212 (La.App. 1st Cir.1983) which involved an identical policy endorsement. In rejecting the insured's interpretation of that provision, the Court quoted Branch v. O'Brien, 396 So.2d 1372, 1377 (La.App.2d Cir.) writ denied 400 So.2d 905 (1981):

*729 The pro rata paragraph of the "Other Insurance" clause would seem to be applicable because it provides that where the insured has other similar insurance available to him, the highest limits of the available policies govern, and each policy is to bear its pro rata share of the loss. Application of the clause here is inconsequential, however, because the available insurance policies were all written by the same company.
Plaintiff is entitled to recover up to the highest limits of the available policies. It matters not in this case, where all policies were issued by the same insurer, whether plaintiff is said to recover under the one policy providing [the highest] limits, or pro rata under each of the four policies. Plaintiff is entitled to judgment against the uninsured motorist insurer, State Farm, for the full amount of her damages, not to exceed the ... policy limits [of the one policy with the highest coverage.]
Plaintiffs, in relying on the quoted policy clause, do not point out or cite what said paragraph is subject to. The paragraph preceding the one cited incorporates into the policy the exception to the anti-stacking provisions of R.S. 22:1406(D)(1)(c). The statute mandates that "with respect to other insurance available the policy of insurance or endorsement shall provide the following" and State Farm accordingly obeyed said mandate by incorporating the required provision into the endorsement. The paragraph cited by the plaintiff is not only subject to the paragraph above it (which lists priorities for an injured occupant of a nonowned vehicle), but also to R.S. 22:1406(D)(1)(c) which prohibits stacking except in one situation. All this endorsement does is incorporate the exception provided for by law into the policy.
The jurisprudence clearly indicates that the statute controls and specifically prohibits stacking. Stephen Sentilles was not occupying a non-owned vehicle on which there was a primary policy providing U.M. coverage. Rather, he was a pedestrian subject to the anti-stacking prohibition contained in R.S. 22:1406(D)(1)(c) and incorporated into each of his father's insurance policies with State Farm.
The judgment of the district court is affirmed.
AFFIRMED.
NOTES
[1] Policy numbers were the same with the addition A, B, etc.
[2] Plaintiffs' counsel conceded during oral argument that the third policy issued in 1980 is not in contest for U.M. coverage or stacking.