186 So. 46

**STATE v. OWIN.**

No. 34971.

Nov. 28, 1938.

Rehearing Denied Jan. 10, 1939.

George Montgomery, of New Orleans, for petitioner.

P. H. Stern and Chas. J. Rivet, both of New Orleans, for respondent.

ROGERS, Justice.

This is a suit in which the State of Louisiana, proceeding under the provisions of Section 9 of Act No. 15 of the Third Extra Session of 1934, as amended by Act No. 5 of the First Extra Session of 1935 and Acts Nos. 7 and 10 of the Fourth Extra Session of 1935, seeks to recover from the defendant, Joseph T. Owin, as a retail dealer, a license tax of $30 for the year 1937, and an additional license tax of $10 for the year 1935.

The defense urged to the suit of the State is that the defendant is a wholesale dealer and not a retail dealer, and that he has paid his license tax as a wholesale dealer for the years stated; that defendant does not sell any of his merchandise to consumers but that he sells only to jobbers and to retail dealers for resale. Defendant claims the right to set off the amounts which he has paid as a wholesale dealer for the year 1937 against any judgment which might be rendered against him as a retail dealer.

There was judgment in the First City Court of New Orleans in favor of plaintiff and against the defendant. The case was appealed to the Court of Appeal for the Parish of Orleans where it was tried

de novo, and the judgment was affirmed. On defendant's application for rehearing, which was refused, the Judge of the Court of Appeal who had rendered the judgment set forth the facts and gave reasons for his judgment in the following words:

"The defendant claims that I am in error, in holding that he is a retail dealer within the meaning of the License Tax Law, because he contends that he sells the gold and silver purchased by him only to dealers.

"The evidence presented in this case exhibits that the defendant is engaged in business at 307 Bourbon St. in the City of New Orleans; that he buys gold and silver which is melted by him and made into plates and bars and then sold either to the United States Government, in accordance with special laws of Congress, or to manufacturing jewelers who, in turn, use these plates and bars to manufacture rings, bracelets, chains and other articles of jewelry which are, in turn, sold by them to the consumer. Ninety per cent of the gold and silver handled by the defendant is sold to the United States Government and the other ten per cent to manufacturing jewelers. It is my opinion that the United States Government can hardly be classed as a dealer in gold. On the contrary, it seems obvious to me that the government is a consumer. Hence, since ninety per cent of the defendant's business is devoted to the selling of gold to the government, he is a retail dealer as defined by the statute. See State v. Milam Grain & Milling Co., Inc., 176 La. 539, 146 So. 47.

"With respect to the small sales defendant makes to manufacturing jewelers, I have been unable to perceive that there is any distinction in principle between the business conducted by the defendant here and that engaged in by the respondents in the case of State v. J. Watts Kearny & Sons, 181 La. 554, 160 So. 77."

The statute under which this proceeding is brought defines a retail dealer as follows:

"Provided, that no person or persons shall be deemed wholesale dealers unless he or they sell by the original or unbroken package or barrel only; and sells to dealers for resale. If they sell in less quantities than original unbroken package or barrel, they shall be considered retail dealers and pay a separate license as such." Act No. 15 of 1934, 3d Ex.Sess. § 8.

In the case of State v. Milam Grain & Milling Co., 176 La. 539, 146 So. 47, this Court, in applying the foregoing classification to a wholesaler selling goods in unbroken packages to a consumer as well as to dealers for resale, held that the wholesaler was subject to the payment of a retail license. In arriving at this conclusion the Court held that a dealer cannot be classified as a wholesaler unless he sells his commodity in unbroken packages and to a dealer for resale. Sales made in broken packages to dealers, and sales, whether in broken or unbroken packages to consumers, are retail transactions.

In the case of State v. J. Watts Kearny & Sons, 181 La. 554, 160 So. 77, the decision in the case of State v. Milam Grain

& Milling Co., supra, was approved and followed. The question presented for decision was whether the defendant, in selling building materials to contractors, subcontractors, municipalities and public boards, was engaged in a retail or wholesale business. The Court held, under the clear language of the statute, to constitute a wholesaler, the dealer must not only sell "by the original or unbroken package," but that he must sell also "to dealers for resale."

The question to be determined in this case is whether defendant's transactions, viz., (a) sales made to manufacturing jewelers and (b) sales made to the United States Government are of such a nature as to fix the character of defendant's business as that of a retail dealer. As shown by the statement of facts submitted by the Court of Appeal, defendant is engaged in the business of buying gold and silver which are melted by him and made into plates and bars and sold either to the United States Government in accordance with special laws of Congress, or to manufacturing jewelers who, in turn, use these plates and bars in the manufacture of rings, bracelets, chains and other articles of jewelry which they sell to consumers; that 90% of the gold and silver handled by the defendant is sold to the United States Government and the other 10% is sold to manufacturing jewelers.

It is clear that a manufacturing jeweler who purchases gold and silver to be used by him in the manufacture of jewelry is not a dealer in that class of merchandise.

While it may be conceded that gold and silver are largely used in manufacturing jewelry, we do not think it can be said that the manufacturer thereof is any more a dealer in old gold and silver than is a contractor who buys building materials and constructs a house is a dealer in lime and cement, nails and lumber, as was held in the case of State v. J. Watts Kearny & Sons, supra. The manufacturer has not resold but has consumed the gold and silver in the manufacture of the jewelry. A purchaser of a ring, bracelet or other article of jewelry can no more be said to be a purchaser of old gold or silver than the purchaser of a completed structure can be said to be a purchaser of lime, cement, nails and lumber.

The defendant contends that sales made by him to the United States Government are compulsory and that as the Government is neither a consumer or dealer for resale, the sales to it should not be considered in determining the character of defendant's business.

We agree with the contention that the United States Government cannot be classified as a dealer in old gold and silver, but we do not agree that it can not be classified as a consumer of these materials. It is a matter of common knowledge that the Government uses the gold and silver it requires for the coining of money or for processing into bullion. The manufacturing jeweler and the United States Government are properly classified as consumers.

Conceding that the sales made by the defendant to the Government are compulsory

and not optional, this circumstance does not change the character of defendant's business. The fact that the defendant deals with the Government constitutes no defense to the State's claim. In the case of Alward v. Johnson, 282 U.S. 509, 514, 51 S.Ct. 273, 274, 75 L.Ed. 496, 75 A.L.R. 9, the Court sustained a state tax upon the gross receipts of an independent contractor carrying the mails. The taxpayer operated an automotive stage line. Two-thirds of his gross receipts, upon the whole of which he was taxed, were derived from carriage of United States mails and the remainder from carriage of passengers and freight. The Court found that the property used in earning these receipts was devoted chiefly to carrying the mails, and that without his contract with the Government the stage line could not be operated profitably. In upholding the tax upon the gross receipts, the Court said [page 274]: "There was no tax upon the contract for such carriage; the burden laid upon the property employed affected operations of the federal government only remotely."

■ Defendant, in his answer and in his application for writs, asked that if he be found to owe a retail license tax he should be permitted to offset against the amount found to be due what he has heretofore paid. However, he has not argued or pressed his contention in this Court, and we assume that he has abandoned his claim.

Our conclusion is that the judgment under review herein is correct.

For the reasons assigned, the judgment of the Court of Appeal is affirmed at relator's cost.

O'NIELL, C. J., dissents.