CULPEPPER, Judge.
This is a companion suit to Lovenia Wilson, Individually and as Natural Tutrix for the Minor, Gallow v. New York Fire & Marine Underwriters, Inc. and Thompson, La.App., 203 So.2d 566, and Thomas v. New York Fire & Marine Underwriters, Inc. and Thompson, La.App., 203 So.2d 566, in which separate judgments are being rendered by us this date. They are three suits for damages for personal injuries arising out of the same two-car collision.
The injured parties were passengers in an automobile driven by Clifton Anderson, Jr. (Not a party defendant.) The other vehicle was driven by Robert Thompson, Jr., the minor son of the defendant, Dr. Robert B. Thompson, who is insured by the defendant, New York Fire & Marine Underwriters, Inc.[1] From an adverse judgment the plaintiffs have appealed.
The substantial issue on appeal is whether young Thompson was negligent in making a left turn at the intersection where he was struck by the approaching vehicle driven by Anderson. Thompson contends the sole cause of the accident was Anderson’s deficient lookout and highly excessive speed; that this speed caused Thompson to misjudge the time he had to complete his left turn; and that if Anderson had been traveling at the legal speed limit of 30 miles per hour, Thompson would have had ample time to complete this left turn in safety. Easter v. Davis, La.App., 153 So.2d 463.
The scene of the collision is the intersection of Main Street, which runs east and west, with Chataignier Street, which runs north and south in the city of Ville Platte. Main Street has two traffic lanes, one east bound and the other west bound, plus a parking lane on each side. Traffic at the intersection is controlled by a signal light.
The accident occurred on Christmas night, December 25, 1965 at about 8:30 p. m. The Anderson automobile was proceeding in a westerly direction along Main Street toward the intersection. The testimony of Anderson and his passengers is generally to the effect that they had been going about 30 miles per hour and had slowed to 15 miles per hour for the traffic light, which was red; as they neared the intersection, the light turned green and they accelerated to about 30 miles per hour; when they reached a point approximately 30 feet from the intersection they saw for the first time the Thompson truck approaching at a speed of 30 to 35 miles per hour; it did not stop but made a left turn directly in front of them; Anderson hit his brakes, but was unable to avoid a collision.
Young Thompson was proceeding in an easterly direction on Main Street, intending to turn left at the intersection. He testified that he stopped for the traffic light which was red; when the light changed to green, he saw the approaching Anderson vehicle approximately 150 yards (450 feet) ahead and about in front of B. J. Fontenot’s Store; he judged that he had ample time to make a safe left turn onto Chataignier Street and hence started this maneuver; he had travelled a distance of about 30 feet and straightened out, with only about three feet of the rear portion of his truck remaining in the westbound traffic lane, when the right rear of his truck was struck a glancing blow by the right front fender of the Anderson automobile. He estimated the speed of the Anderson vehicle at 60 to 65 miles per hour.
*564 The trial judge found that the sole cause of the accident was the excessive speed of the Anderson automobile. He states in his reasons for judgment:
“The law as such does not prohibit left turns if they are made under safety circumstances. In this case the evidence reveals that this young man had stopped for a red light and as the light turned green he noticed this other car coming from 150 yards away and decided that he had ample time to turn. The evidence further reveals that if the driver of this automobile, Clifton Anderson, .Jr., had not been driving at an excessive rate of speed there would have been no accident.
“In other words, because the credibility of the plaintiffs and the driver has been impugned the Court has not considered their testimony as worthy of belief with regard to the accident itself. Therefore, the Court is of the opinion that the sole and proximate cause of this accident was the negligence of Clifton Anderson, Jr. in driving at an excessive rate of speed under the circumstances.”
After carefully reviewing the record, it is our conclusion that the evidence does not support the finding of excessive speed on the part .of Anderson. The only evidence to this effect is the testimony of young Thompson that the Anderson automobile was traveling 60 to 65 miles per hour. Such an estimate could possibly be reconciled with the other facts if the Anderson automobile had actually been 150 yards (450 feet) from the intersection at the time young Thompson started his left turn. But the evidence shows conclusively that this distance was not 150 yards, but, instead, was 150 to 175 feet.
Thompson said the Anderson automobile was in front of B. J. Fontenot’s Store when he started his left turn. To the same effect is the testimony of an independent witness, Carroll Prudhomme, and his passenger, Brenda Ortego, who were in a car immediately behind Thompson, and who also said that when Thompson started his left turn the Anderson vehicle was approximately in front of B. J. Fontenot’s Store. However, these two independent witnesses estimated the distance to Fontenot’s Store at 150 to 175 feet. Prudhomme actually went to the scene the morning of the trial and stepped off the distance between the intersection and Fontenot’s Store and found it to be 67 steps, which at his estimate of two and one-half feet for each of his steps, would be 1651/2 feet. It is noted, that both of these are defendants’ own witnesses.
In their original brief filed on appeal counsel for defendants actually admit that when young Thompson started his left turn the Anderson vehicle was 150 to 175 feet from the intersection, not 150 yards (450 feet). This brief states:
“Bobby Thompson, Jr., the driver of the truck, estimated that this distance was about 450 feet, however Carol Prud-homme, on the day of the trial, actually stepped off this distance and found it to be 67 steps, or a distance of approximately 150 to 175 feet. (Tr. 342).
“Under the aforesaid circumstances, the sole question presented to this Court at this time is: Is it negligence or contributory negligence for a vehicle parked at a red light to make a left hand turn in front of an oncoming vehicle which is 150 to 175 feet feet away at the time that the left turning vehicle begins its turn?”
Now let us consider Thompson’s contention that if Anderson had been traveling at the legal speed of 30 miles per hour, Thompson could have completed his turn in safety. At 30 miles per hour, a car travels 44 feet per second and would traverse the approximately 165 feet in question in 3.7 seconds. It is obvious that the left turn could not have been completed safely in 3.7 seconds. Actually, young Thompson testified that it took 15, 16 or 17 seconds to make his left turn. Can oil Prudhomme estimated that it took Thompson 5 or 6 or maybe 10 seconds. The distance required *565 to complete the turn was about 30 feet. Thus, using any of these estimates as to the time required to make the left turn in question, it is obvious that there was not sufficient time, even assuming that Anderson was proceeding at the legal speed limit of 30 miles per hour.
As stated above, the only evidence in the record to show an excessive speed on the part of the Anderson vehicle is the testimony of young Thompson. Carroll Prudhomme and his passenger estimated Anderson’s speed at 25 to 30 miles per hour. The police officer who investigated the accident, John Guillory, stated that in his opinion, based on the physical facts found after the collision, Anderson was not exceeding the speed limit of 30 miles per hour.
These physical facts do indeed fail to show a highly excessive speed. After the impact, which was a glancing blow, Anderson’s vehicle proceeded only an additional 45 feet, according to the police officer’s actual measurement. The Thompson truck was not severely damaged and was actually driven away from the scene. There were admittedly no skidmarks to indicate that Anderson was speeding. Plaintiffs’ injuries were not severe and would not indicate a hard impact.
In summary, we find no evidence in this record to support a finding that Anderson was exceeding the speed limit of 30 miles per hour, except the testimony of young Thompson and, as above demonstrated, his estimate of distance and speed is obviously erroneous.
 Having reached this factual conclusion, it necessarily follows that Thompson was negligent in attempting a left turn at a time when it was unsafe to do so. Our courts have uniformly held that a left turn is a highly dangerous maneuver and that it is the duty of the motorist making such a turn to determine in advance that it can be made in safety. Doerle v. State of Louisiana Through Dept. of Highways, La.App., 147 So.2d 776; Redball Motor Freight, Inc. v. Rockco, La.App., 195 So.2d 720.
The next issue is the quantum of damages. On the night of the accident the three injured parties were taken to the R. E. Dupre Hospital & Clinic where they were examined by a doctor. The most seriously injured was Morris LeDay, Jr. The doctor initially diagnosed a strain of the muscles in the left side of the chest, the left hip and the left thigh. LeDay was later hospitalized on December 28 but was discharged on December 31, 1965. However, due to his continued complaints of pain in his back he was referred to Dr. Robert Bordelon, a specialist in orthopedics.
Dr. Bordelon was of the opinion that although LeDay did have a spondylolisthesis, there was no slipping of the vertebra and this condition was not caused or aggravated by the accident. Summarizing, this physician was of the opinion that as of the time of his examination LeDay had no residuals of the accident, and that he had no serious impairment and could return to work.
Under the circumstances it is our opinion that LeDay suffered mild muscular strains from which he recovered within a few weeks and that an award of $1,000 in general damages is appropriate. His medical expenses were $185 to the hospital and $20 to the doctor.
Bernella Gallow received only a mild contusion of the forehead. She remained in the hospital one day. She contends she lateV took an overdose of drugs prescribed for her by the doctor but the effects were temporary and not serious. Under the circumstances, we award to Ber-nella Gallow the sum of $150 for general damages, plus $66 in medical expense.
Betty Jane Thomas was also in the hospital only one day. Dr. Reed Fontenot testified that she had a mild cervical strain for which she was given a shot of demerol and that she probably had stiffness of the *566 neck for four or five days. Under the circumstances, we award to Betty Thomas the sum of $250 in general damages, plus $75 medical expense.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Morris LeDay, Jr., and against the defendants, Dr. Robert B. Thompson and New York Fire & Marine Underwriters, Inc., jointly, severally and in solido, for the sum of $1,000 in general damages, plus $205 for medical expense incurred, together with legal interest thereon from date of judicial demand until paid. It is further ordered that the defendants pay all costs in the lower court, as well as the costs of this appeal.
Reversed and rendered.

. In the trial court the defendant insurer made a coverage defense that the Thompson boy was not insured while driving this 1957 model pickup truck because it was allegedly owned by Dr. Thompson but not insured. However, the facts showed that the truck was not owned by Dr. Thompson, but instead was owned by his gardener, Joe Edwards, and was being used with the owner’s consent as a temporary substitute for Dr. Thompson’s 1964 model Plymouth which was admittedly insured and was being repaired. The insurer has not argued its coverage defense on appeal and hence we will consider this contention abandoned.