MILLER, Judge.
These are three separate suits for personal injuries arising out of the same two-car collision. This is a companion suit to Kelly v. State Farm Mutual Automobile Insurance Company, 244 So.2d 307 (La. App., 3 Cir. 1971) and Nellon v. State Farm Automobile Insurance Company, 244 So.2d 307 (La.App., 3 Cir. 1971), in which separate judgments are being rendered by us this day.
Plaintiffs-Appellees are three sisters, Linda Joyce Nellon, Beatrice Nellon Kelly, and Mary Ida Nellon, who were injured as a result of an automobile accident which occurred in Ferriday, Louisiana, at 8:30 o’clock P.M. on Saturday, August 23, 1969. They were guest passengers in an automobile driven by Lawyer Kelly, third-party defendant-appellant. The other vehicle was driven by Allen J. Firmin with the permission of its owner, Allen’s father, Wallace E. Firmin. The Firmin vehicle was insured by defendant, State Farm Mutual Automobile Insurance Company, defendant-appellant and third-party plaintiff.
Plaintiffs filed three separate suits against State Farm, which answered each one and made Lawyer Kelly a third-party defendant alleging that the negligence of Kelly was the sole cause of the accident. State Farm also sought to recover its sub-rogated property damage to the Firmin vehicle from Kelly. Alternately, State Farm sought contribution from Kelly for any sums which it might be cast in favor of the plaintiffs. Kelly answered the third-party demands and the three suits were consolidated for trial. After trial on the merits, the trial judge found that Lawyer Kelly, was negligent in attempting a left turn in the face of opposing traffic and that Allen J. Firmin was negligent in driving too fast and attempting to go through a traffic signal in the middle of a light change and while the signal was yellow. The trial judge granted recovery in favor of the three plaintiffs against State Farm, gave State Farm judgment against Kelly for one-half as contribution, rejected State Farm’s property damage claim against Kelly and taxed State Farm with all costs. Appeals to this court were taken by State Farm and answered by plaintiffs who prayed for increased awards in each case. Lawyer Kelly took an appeal from the judgment against him.
The principal issues are as follows: 1) Whether Lawyer Kelly was negligent in making a left turn in the face of the approaching Firmin car; 2) whether Firmin was traveling too fast and maintaining a proper lookout; and 3) quantum.
On August 23, 1969, Lawyer Kelly was driving his 1967 Ford Fairlane automobile in a northerly direction on Fourth Street in Ferriday, Concordia Parish, Louisiana. He was approaching the intersection of Fourth Street and Carolina Avenue. Linda Joyce Nellon, Beatrice Nellon, Mary Ida Nellon and Hattie Nellon were riding as guest passengers in the Kelly vehicle. At about the same time Allen James Fir-min was driving his father’s 1969 Ford automobile insured by State Farm, in a southerly direction on Fourth Street approaching its intersection with Carolina Avenue. Miss Cheryl Rogers was a guest passenger in the Firmin vehicle. As the two vehicles approached from opposite directions, Lawyer Kelly attempted to execute a left turn onto Carolina Avenue at which time the right side of his vehicle was struck by the front of the vehicle operated by Allen Firmin. Linda Nellon, Beatrice Nel-lon and Mary Ida Nellon sustained personal injuries and Lawyer Kelly, Hattie Nellon, Allen Firmin and Cheryl Rogers were uninjured.
Fourth Street is a four lane asphalt paved highway with two lanes of traffic for north bound traffic and two traffic lanes for *305 south bound traffic. Carolina Avenue is a two lane street accommodating east-west traffic and the intersection of Fourth and Carolina is controlled by electric traffic lights operating in a green, yellow, red sequence. The speed limit in the immediate vicinity of the intersection is 25 miles per hour.
Lawyer Kelly testified that the light was red as he approached the intersection and that there was a car stopped in front of him preparing to turn left. He stated that when the light turned green the car preceding him turned and he saw the lights on Fir-min’s car. The Firmin vehicle at this time was about half a block away in the vicinity of Lee’s Grocery traveling toward him. He stated that when he made his turn he took his eyes off Firmin’s car and heard the brakes slide and looked again. The front end of Firmin’s car hit the right side of Kelly’s car about 10 feet west of the center of the intersection. There was substantial agreement among the passengers in Kelly’s car that the Firmin car was in the vicinity of Lee’s Grocery when they first saw it. Kelly stated in effect that Lee’s Grocery was approximately 239 feet from the intersection and that Firmin was approximately 124 feet away when Kelly began to make his turn.
Allen Firmin testified that Kelly was stopped at the light when he first saw him, and that Kelly had his left turn blinker on. He stated that the light was green at that time and as it changed to yellow Kelly began his turn. He stated that Kelly was in the inside lane and that he was also in the inside lane. He denies seeing any other car turning ahead of Kelly. Firmin admits that he did not reduce his speed when he saw Kelly and he does not remember how fast he was going. His passenger Miss Cheryl Rogers also testified that she did not know how fast they were going. Fir-min stated he had the radio on at the time. Miss Rogers testified that she just happened to look up, the light was yellow and “we couldn’t stop”.
There is no serious dispute that Lawyer Kelly was • negligent in making a left turn in the face of opposing traffic. The evidence is quite clear that the Firmin vehicle was approaching the intersection a short distance away and that a left turn in the face of this situation constituted negligence. Indeed counsel for plaintiffs, who also defended Lawyer Kelly on State Farm’s property demand, conceded in his closing argument at the trial that Kelly was negligent. Although counsel for Kelly on appeal now contends Kelly was not negligent, we think there is no serious argument on this question.
The problem of whether Firmin was negligent by going too fast and failing to keep a proper lookout is a closer question. Fir-min admittedly saw Kelly stopped at the light with his left turn indicator on. He testified that when the light turned yellow that Kelly began his turn. Firmin conceded that he did not know how fast he was going and that he did not reduce his speed when he saw Kelly, despite the yellow light and the fact that Kelly was signalling a left turn. Firmin’s- passenger, Miss Cheryl Rogers’ testimony was substantially the same.
Pete Turner a deputy sheriff who, although he did not see the accident, happened upon it seconds after it occurred testified that the Firmin car made 61 feet of skid-marks. He also testified that the speed limit in this area was 25 miles per hour and that both vehicles were damaged substantially, the Kelly car in the amount of $559.59 and the Firmin car in the amount of $1,-530.65.
We find that Firmin, when faced with an opposing motorist stopped, signal-ling for a left turn, and in the face of a caution light, was negligent in failing to reduce the speed of his vehicle. We also find that 61 feet of skidmarks, the substantial damage occurring to both cars indicating a rather severe impact, and Firmin’s own testimony in which he did not remember his speed, evidence the fact that he was
*306 substantially exceeding the speed limit of 25 miles per hour. Even 25 miles per hour may have been excessive for this intersection on a Saturday night. This was a proximate cause of the accident.
State Farm cites the case of LeDay v. New York Fire and Marine Underwriters, Inc.; 203 So.2d 562 (La.App. 3 Cir. 1967) in which the factual situation was strikingly similar. The LeDay case concerned an accident occurring in Ville Platte at an intersection where the speed limit was 30 miles per hour. It involved a left-turning motorist and the question of whether the opposing motorist was traveling too fast. The trial court held that defendant was traveling too fast and awarded damages in favor of the passengers of the left-turning motorist. We reversed this decision, holding that the defendant motorist was not speeding and that the accident was caused solely by the negligence of the left-turning motorist. In LeDay our reasoning on the subject of defendant’s speed was as follows:
“As stated above, the only evidence in the record to show an excessive speed on the part of the Anderson vehicle is the testimony of young Thompson. Carroll Prudhomme and his passenger estimated Anderson’s speed at 25 to 30 miles per hour. The police officer who investigated the accident, John Guillory, stated that in his opinion, based on the physical facts found after the collision, Anderson was not exceeding the speed limit of 30 miles per hour.
“These physical facts do indeed fail to show a highly excessive speed. After the impact, which was a glancing blow, Anderson’s vehicle proceeded only an additional 45 feet, according to the police officer’s actual measurement. The Thompson truck was not severely damaged and was actually driven away from the scene. There were admittedly no skidmarks to indicate that Anderson was speeding. Plaintiff’s injuries were not severe and would not indicate a hard impact.”
We do not have the same situation here. In LeDay the damage to the automobiles was not substantial and here it was. There were no skidmarks by the Anderson car to indicate his speed. Plaintiffs’ injuries were not severe in LeDay, thus indicating the impact was not hard. Moreover in LeDay there was substantial testimony from the witnesses to the effect that defendant’s car was not speeding. In the instant case we have no such testimony and in fact the defendant himself and his guest passenger do not recall the speed at which they were traveling nor did any of the other witnesses. Several of the Kelly passengers indicated that defendant Firmin was going too fast.
We find no manifest error in the trial court’s assessment that both Kelly, the left-turning motorist, and Firmin, the opposing motorist, were negligent. Having found Firmin negligent it follows that State Farm is not entitled to recover against Kelly for the subrogated property claim.
We must now consider the question of quantum.
The trial judge awarded Matthew Nellon $4,000.00 for the benefit of his minor daughter Linda Nellon and $264.20 for medical expenses. Plaintiff has answered the appeal asking that this be increased to $7,000.00 plus medical expenses. Linda, 16 years of age, sustained a compression fracture of lumbar vertebrae No. 2 and was compelled to wear a corset type brace for a period of three months. At the time of Her last visit, Dr. Passman, the treating physician, found that she was substantially free from pain and should be unrestricted in her activity. We find no manifest error in the award of $4,000.00.
Beatrice Nellon was awarded $300.-00 plus $85.00 medical expenses and plaintiff has answered the appeal asking for $1,-500.00 plus medical expenses. Beatrice’s only injury was a sprained ankle and we find no manifest error in this award.
*307 Mary Ida Nellon was awarded the sum of $4,500.00 plus medical expenses of $205.00 by the trial judge for a fracture of the ramus of the right pubis (pelvic region). Dr. Henderson indicated some possibility of future difficulties because of what he felt to be a “20% permanent, partial disability of the body as a whole” but he felt she would have no pelvic restriction and no trouble having children. We find no error in the trial judge’s award.
Accordingly, the judgment of the trial ■ court is affirmed. Costs of court on appeal are taxed to State Farm Mutual Automobile Insurance Company and Lawyer Kelly.
Affirmed.