494 So.2d 1226 (1986)
Donald ROGER, Plaintiff-Appellee,
v.
The ESTATE OF Tad MOULTON, et al., Defendants-Appellants.
No. 85-812.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1986.
On Rehearing October 15, 1986.
Writ Granted December 12, 1986.
*1227 Gregory Moroux, of Voorhies and Labbe, Raymond C. Jackson, of Allen, Gooch and Bourgeois, Lafayette, for defendants-appellants.
Robert Keaty, of Keaty & Keaty, Lafayette, Kerry Shields, of Keaty & Keaty, New Orleans, for plaintiff-appellee.
Mack E. Barham, of Barham and Churchill and Gail N. Wise, New Orleans, for defendant-appellee.
Before GUIDRY, DOUCET and MANSOUR,[*] JJ.
GUIDRY, Judge.
This case arises out of a vehicle collision involving three vehicles. The accident occurred on July 3, 1981, near the intersection of Louisiana Highway 82 and Louisiana Highway 333 in Vermilion Parish.
*1228 Tad Moulton (hereafter Moulton), the driver of a Pontiac Trans Am, was proceeding north on Louisiana Highway 333 after returning from a two week offshore tour of duty on an oil rig. Moulton had three passengers in his car, all of who were anxious to get home. After having come ashore, the Moulton party bought three six-packs of beer. Moulton consumed at least two beers and was drinking a third at the time of the accident. A blood-alcohol test determined that Moulton's blood contained.09% alcohol by weight at the time of the accident. Moulton died at the accident scene from injuries sustained in the collision.
It had been raining most of the morning of the accident. At the time of the accident it was raining hard. The sky was overcast but not dark.
Donald Roger (hereafter Roger), one of the plaintiffs in the several suits filed, was proceeding south on Louisiana Highway 333 while driving a United Parcel Service (hereafter UPS) truck when Moulton crossed the double yellow line on the highway and struck the left front side of the UPS truck with the left front side of his Trans Am. Roger suffered numerous personal injuries as a result of the accident. The investigating officer placed the point of impact in the southbound lane some 4 feet 2 inches from the centerline of the highway. The UPS truck came to rest in a ditch on the west side of the road. Roger was thrown to the back of the truck and woke up two days later in the hospital. He remembered nothing about the accident.
The third vehicle allegedly involved in this accident was a white and blue pickup truck owned by Pierce Enterprises, Inc. (hereafter Pierce) and driven by its employee, Owen Schexnyder. Schexnyder had been proceeding south, the same direction as the UPS truck, toward Intercoastal City. Some 10 minutes before the collision the pickup truck experienced transmission difficulties. Because the manual transmission became stuck in second gear, Schexnyder decided to pull off the road to perform a quick repair. Schexnyder pulled completely off of the road onto the eastern shoulder still facing south. He then exited from the pickup and crawled underneath to repair the transmission. The Pierce vehicle was not struck and did not strike either of the other two vehicles. However, there were allegations that the position of the pickup forced Moulton to cross the double yellow line where the collision occurred.
Several suits were filed as a result of this accident. Initially, on June 19, 1982, Donald Roger filed suit against the Estate of Tad Moulton, Frank Moulton, Jr., administrator, and Maryland Casualty Company (hereafter Maryland), the liability insurer of the Trans Am owned by Frank Moulton, Jr. and driven by Tad Moulton, our docket number 85-812. Later amendments added Global Marine, Inc. (hereafter Global), Tad Moulton's employer, Pierce and its insurer, Maryland. Roger eventually settled with and dismissed all of the above defendants.
In a separate suit, our docket number 85-813, 494 So.2d 1238, Liberty Mutual Insurance Company (hereafter Liberty), the worker's compensation carrier for UPS, filed suit against the Succession of Thaddeus R. Moulton and Maryland for sums paid and to be paid to Roger for worker's compensation and medical expenses. Liberty, as worker's compensation carrier, then moved to consolidate the suits which bear our docket numbers 85-812 and 85-813, and to intervene in 85-812. Through two supplemental and amended petitions, Liberty added Pierce, Pierce's insurer, Maryland, and Global as defendants. Liberty did not settle with nor did they dismiss any of these defendants.
While the suit by Liberty, in its capacity as worker's compensation carrier, was still pending against the various named defendants, Roger, on January 17, 1984, filed a separate suit, our docket number 85-814, 494 So.2d 1239, against Liberty seeking recovery of damages against Liberty as the uninsured motorist carrier for UPS. Roger *1229 also, by amended petition, joined Liberty, in its capacity as the uninsured motorist carrier for UPS, in the first suit, our docket number 85-812. By motion of all counsel, 85-814 was also consolidated with 85-812 and 85-813. UPS and Liberty, in its capacity as worker's compensation carrier for UPS, then intervened in Roger's suit against Liberty as UM carrier, alleging that they should be subrogated to Roger's rights to the extent of the worker's compensation benefits paid to Roger.
After all this procedural maneuvering, the consolidated cases went to trial. At time of trial, the only viable claims remaining were Roger's suit against Liberty in its capacity as the UM insurer for UPS, and Liberty's suit, as the worker's compensation carrier for UPS, against (1) the Succession of Thaddeus Moulton, (2) Maryland, Moulton's insurer, (3) Pierce, (4) Maryland, Pierce's insurer, (5) Global, and, (6) Liberty, as the UM carrier for UPS.
The trial court found, in written reasons, that the accident was caused solely by the negligence of Moulton, and that Roger and Pierce were without negligence; Roger suffered $406,479.06 in damages; Liberty was liable for uninsured motorist coverage in Louisiana in the amount of $200,000 because a rejection letter by UPS was not attached to the automobile insurance policy; Liberty, as worker's compensation carrier, could not collect additional sums from Maryland as Moulton's liability insurer, since Roger had settled with Maryland for its policy limits; and, Liberty, as worker's compensation carrier, could not recover from Roger a reimbursement for the worker's compensation paid to him out of the award he received from Liberty as UM carrier for UPS. A formal judgment, in accord with these reasons, was signed on January 24, 1985.[1]
Liberty, as the uninsured motorist insurer, perfected a suspensive appeal urging three assignments of error, while Liberty, as worker's compensation insurer for UPS, perfected a devolutive appeal urging an additional three assignments of error. Roger and the other parties did not appeal, nor do they answer the appeals of Liberty.
The cases remain consolidated on appeal. We will consider all issues in this opinion but we render separate decrees in the consolidated cases.
ISSUES
1. Did the trial court err in not finding Pierce partially at fault in causing the accident.
2. If Pierce is found partially at fault, may Liberty, as worker's compensation carrier, recover the full amount of its claim from Pierce under principles of solidary liability.
3. Did Liberty provide uninsured motorist coverage under the policy issued to UPS.
4. Is Roger's lawsuit against Liberty, as uninsured motorist carrier, prescribed.
5. Is Liberty, as compensation carrier, entitled to any recovery out of Roger's judgment against Liberty, as uninsured motorist carrier.

ISSUE NO. 1
The trial court found Pierce free of any negligence. Liberty urges that the trial court was clearly wrong in not finding Pierce partially at fault in causing the accident. La.C.C. art. 2323. Liberty argues that the driver of the Pierce vehicle breached statutory duties under La.R.S. 32:141,[2] *1230 and R.S. 32:368,[3] or breached his duty as a reasonably prudent driver.
Liberty argues that Schexnyder, the Pierce driver, parked in such a manner as to make it extremely difficult for Moulton to pass without crossing the double yellow lines. Alternatively, they contend Schexnyder should have turned right on nearby Louisiana Highway 82 and then pulled off the road, or that he should have pulled into the parking area in front of John's Trading Post, a roadside store near the intersection of Louisiana Highway 333 and Louisiana Highway 82. We disagree that Pierce, through its employee, breached any duty towards Moulton or Roger.
La.R.S. 32:141 is normally applied when drivers leave part or all of their vehicle, disabled or not, protruding onto a highway. And, even if the vehicle does protrude onto the road, the driver may not be negligent if stopping in such a manner was due to an emergency situation, such as a disabling mechanical failure, and the driver attempts to move the vehicle off of the road as soon as possible. See Ruppert v. Stout, 231 So.2d 428 (La.App. 3rd Cir.1970); Youngblood v. Oil Well Chemical Co. of LA, 352 So.2d 316 (La.App. 4th Cir.1977).
The trial court found that the pickup "was not parked on the roadway". We agree. There is ample evidence that the Pierce vehicle was parked with no part of the pickup protruding onto the highway, and that the stop was necessitated by a mechanical failure. Both the driver and the passenger of the Pierce pickup testified that the transmission would not shift from second to third gear. Both agreed that this problem made it necessary to stop. The passenger noted that the transmission became stuck between the two gears and that they could only travel 10-15 mph under those circumstances. Schexnyder stated that he did not have time to turn right on Louisiana Highway 82 because he first noticed the problem when he was past the intersection caution light. He also stated *1231 that he was too far south of John's Trading Post to pull into its parking lot. Additionally, he stated that he did not pull off on the right side of the road because the shoulder was not wide enough. The passenger in the pickup opined that they could have pulled into John's Trading Post parking lot. However, he also stated that they were traveling about 35 mph when the problem was noticed, and that they were about 20 feet from John's Trading Post at the time.
Both the driver and the passenger testified that they were completely off of the road, although they differed as to exactly how far off of the road they had parked. The investigating police officer did not actually see the pickup, but from interviewing witnesses he concluded that the pickup was parked completely off the road. Even one of the passengers in the Moulton vehicle testified that, to the best of his knowledge, the pickup was not protruding in any manner into the north bound lane.
In sum, the record evidence amply supports the trial court's conclusion that the Pierce vehicle was parked entirely on the shoulder of the road and posed no hinderance to safe use of the highway by the Moulton and UPS vehicles. Under the facts presented, La.R.S. 32:141 and La.R.S. 32:368 are clearly inapplicable.[4]
Lastly, Liberty contends that Pierce did not act as a reasonably prudent person and thus breached its duty toward the other parties. Liberty cites Murray v. Kuhn, 345 So.2d 917 (La.App. 4th Cir.1977). We find no support in the record for this contention. Further, Murray, supra, is clearly factually inapposite. For these reasons, we find no merit in Liberty's first assignment of error and our conclusion in this regard renders unnecessary any discussion of Liberty's second assignment of error.

ISSUES 3 AND 4
Although the Liberty policy does not by its terms provide uninsured motorist coverage, the trial court concluded that La.R.S. 22:1406D(1)(a) mandates such coverage in an amount equal to the liability limits thereof, in that UPS's written rejection of such coverage was not attached to the policy as required by La.R.S. 22:628. In reaching this conclusion, the trial court relied on our decision in Stroud v. Liberty Mutual Insurance Co., 429 So.2d 492 (La.App. 3rd Cir.1983), writ denied, 437 So.2d 1147 (La. 1983).
On appeal, Liberty, in its capacity as the alleged UM carrier for UPS, argues that the policy sued on does not provide UM coverage to UPS because UPS validly rejected uninsured motorist coverage in writing, pursuant to the provisions of La.R.S. 22:1406D(1)(a). Additionally, Liberty argues that it provided no UM coverage to UPS for the further reason that the policy by its terms fails to provide UM coverage and La.R.S. 22:1406D(1)(a) is inapplicable because the Liberty policy was written outside the State of Louisiana and issued for delivery outside of this state.
We first consider Liberty's latter contention.
La.R.S. 22:1406D, as relevant to this discussion, provides in pertinent part as follows:
"D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of *1232 bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits." (Emphasis ours).
In the case sub judice, the Liberty policy was issued from Liberty's Boston, Mass., office and was delivered to UPS at its Greenwich, Conn. office. However, the policy specifically covered UPS trucks and other vehicles registered and principally garaged in the State of Louisiana. Liberty argues, based upon these facts, that La. R.S. 22:1406D(1)(a) is inapplicable and in support of its argument relies on Snider v. Murray, 461 So.2d 1051 (La.1985).
In Snider, supra, the policy was issued and delivered in Texas by a Texas insurance agent to Snider, who, at the time of issuance, was a Texas resident. Snider subsequently moved to Louisiana. At the time of the accident, which occurred in Louisiana, Snider was domiciled in this state and the automobile was garaged here. In concluding that, under such circumstances, La.R.S. 22:1406D(1)(a) did not mandate uninsured motorist coverage, our Supreme Court stated:
"We agree with the Abel decision. Perhaps Louisiana law applies in this litigation, as the Second Circuit concluded, because the accident happened in Louisiana where both Snider and the tortfeasor were then domiciled. However, even if Louisiana law is the choice of laws to be applied, the only Louisiana law which requires underinsured motorist coverage in the amount of the bodily injury liability limits is La.R.S. 22:1406D(1), and that statute by its express terms purports to affect only an automobile policy "delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state". There is no dispute that the policy in the present case was neither "delivered" nor "issued for delivery" in this state. Therefore, plaintiffs cannot avail themselves of La.R.S. 22:1406D(1) to impose that statute's underinsured motorist requirements upon the policy issued in Texas for delivery in Texas to a Texas resident. 3 Perhaps the Legislature could have enacted a law which under modern conflict of laws theories would affect insurance policies written in other states when the accident occurs in Louisiana, but the Legislature did not include such a provision in La.R.S. 22:1406D(1).4" (Footnotes omitted).
Subsequent appellate decisions, relying on Snider, supra, have reached this same conclusion. See Sumrall v. McNeese, 476 So.2d 531 (La.App. 1st Cir.1985); George v. State Farm Mut. Auto. Ins. Co., 471 So.2d 974 (La.App. 1st Cir.1985); Decatur v. United States Fidelity & Guar. Co., 464 So.2d 854 (La.App. 5th Cir.1985). See also, Bloodworth v. Carroll, 455 So.2d 1197 (La. App. 2d Cir.1984), reversed, 463 So.2d 1313 (La.1985), instructing the court to apply Snider, supra. In Snider, supra, plaintiffs argued that Section 1406D(1) should apply because Snider's car was garaged in this state at the time of the accident. In rejecting this contention, the court stated:
"... However, Section 1406 D(1) clearly makes delivery or issuance for delivery in Louisiana the critical criteria and the phrase "with respect to any motor vehicle registered or principally garaged in this state" is a limiting term to the requirement of delivery or issuance for delivery in this state."
Our careful consideration of Snider prompts the conclusion that its holding is inapposite under the facts present in this case. The record reflects that UPS conducts *1233 operations in most if not all fifty states. The nature of its business requires that it have vehicles registered and garaged in the several states in which it operates. The Liberty policy, although issued and delivered outside the State of Louisiana, provides coverage for UPS trucks and other vehicles located in Louisiana and other states. Under these circumstances, we conclude that, insofar as such policy applies to UPS motor vehicles registered and principally garaged in the State of Louisiana, such policy was "issued for delivery in this state" and therefore, the provisions of La. R.S. 22:1406D(1)(a) apply.
We next consider Liberty's alternate contention that the trial court erred in concluding that UPS did not validly reject UM coverage.
The Liberty policy is dated January 1, 1981 and was issued for the period January 1, 1981 through January 1, 1984. The policy does not provide uninsured motorist coverage on any Louisiana vehicles listed therein. The policy at issue is apparently a renewal of coverage which has been furnished to UPS by Liberty at least since the year 1974. At trial, Liberty introduced in evidence as Exhibit D-2 a letter dated January 2, 1974 written by the insurance manager of UPS to Liberty Mutual expressly rejecting UM coverage in the State of Louisiana, beginning on January 1, 1974. The letter was not attached to the policy at the time and was not attached to the 1981 policy. Liberty Mutual offered to introduce in evidence a letter, marked as its Exhibit D-3, dated March 2, 1981, written over the signature of Kenneth L. Johnson, insurance manager for UPS. The offering was denied by the trial court because of alleged irrelevancy but was accepted as a proffer of proof. We conclude that the trial court clearly erred in disallowing this evidence. We are satisfied as to the relevancy of this evidence and its importance in a determination of the issue presented. For this reason we quote the body of the March 2, 1981 letter in its entirety:
"In accordance with our standard procedure and instructions to Liberty Mutual please reject the uninsured motorist coverage in the State of Pennsylvania effective March 1, 1981.
Since this is our standard practice, regarding uninsured motorist coverage in the event any other state changes their law or regulations to allow rejection of this coverage, please do so immediately on the earliest possible effective date."
As aforestated, the trial court concluded that La.R.S. 22:1406D(1)(a) mandates UM coverage under the policy at issue in an amount equal to the liability limits thereof, in that the 1974 rejection letter was not attached to the policy as required by La. R.S. 22:628, relying on our decision in Stroud v. Liberty Mutual Insurance Company, supra. Were it not for the letter of March 2, 1981, Stroud, supra, would dictate the result reached by the trial court. However, when the contents of this letter are considered together with the body of the other evidence presented, it is crystal clear that UPS validly rejected UM coverage under the 1981 policy and that our decision in Stroud, supra, is inapposite.
La.R.S. 22:1406D(1)(a) was amended by Act 438 of 1977, effective September 9, 1977, so as to eliminate the necessity for physical attachment of a rejection of UM coverage to the policy as previously required by La.R.S. 22:628. The amendment provides in pertinent part as follows:
"Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto."
We held as we did in Stroud, supra, because the letter rejecting UM coverage was written a long time prior to the effective date of Act 438 of 1977 and was not physically attached to the policy. In the instant case, the initial letter rejecting UM coverage *1234 by UPS was likewise written a long time prior to September 9, 1977, however, after issuance of the policy at issue and before occurrence of the accident sued on, the letter of March 2, 1981 was written and received by Liberty Mutual. We consider this letter to be a clear rejection in writing of UM coverage in the State of Louisiana. The letter makes clear that it is UPS' standard procedure to reject uninsured motorist coverage in any state permitting such rejection. Further, the letter specifically instructs Liberty to immediately cancel any UM coverage in any state that allows a rejection of such coverage at the earliest possible date. At the very least, in our view, the March 2, 1981 letter ratified UPS' previous rejection of coverage insofar as the State of Louisiana is concerned, because the letter specifically refers to any change in state law which would permit a rejection of coverage with instructions to cancel coverage in accordance with that change. The initial rejection in writing is dated January 2, 1974, was not attached to the policy and was therefore ineffective. However, the law of Louisiana was changed in 1977 and, pursuant to that change, Liberty Mutual was directed to immediately cancel.
Because we have found that the Liberty policy does not provide UM coverage, we need not discuss the other remaining issues raised by appellant.
For the above and foregoing reasons, the judgment of the trial court is reversed and set aside insofar as it casts Liberty Mutual Insurance Company in judgment as the uninsured motorist carrier of United Parcel Service, and plaintiff's demands against Liberty Mutual Insurance Company as uninsured motorist carrier for United Parcel Service is ordered dismissed with prejudice. Further, all costs at the trial level and on appeal, excepting costs for the jury empaneled but released before trial, are to be paid one-half (½) by plaintiff, Donald Roger, and one-half (½) by Liberty Mutual Insurance Company. Jury costs at the trial level are to be paid by Liberty Mutual Insurance Company as per its stipulation. In all other respects, the judgment of the trial court is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND, RENDERED.

ON REHEARING
In our original opinion we concluded that United Parcel Service (UPS) rejected in writing uninsured motorist (UM) coverage in the State of Louisiana and, therefore, the automobile liability policy issued by Liberty Mutual Insurance Company (Liberty Mutual) to UPS did not provide that coverage. In doing so, we relied on a letter from Kenneth Johnson, insurance manager of UPS to William Connor of Liberty Mutual, dated March 2, 1981. The trial court had ruled otherwise, finding that the letter referred to was inadmissible in evidence, being irrelevant.
We granted a rehearing to plaintiff-appellee, Donald Roger, to reconsider our aforesaid ruling.
We also granted a rehearing to intervenors-appellants, Liberty Mutual and UPS, to consider their assertion that our original opinion left unanswered an issue raised on appeal, i.e., whether Liberty Mutual is entitled to recover any monies it paid to Donald Roger, as worker's compensation benefits, out of the proceeds of settlements between Roger and Maryland Casualty Company, the insurer of two parties dismissed from this litigation as a result of those settlements.
We first address the issues raised on rehearing by plaintiff-appellee, which are framed in brief as follows:
I. The trial judge correctly ruled that the letter of March 2, 1981 is inadmissible in evidence.
A. The letter of March 2, 1981 is inadmissible in evidence because it is irrelevant to the issue presented.
B. The letter of March 2, 1981 is inadmissible in evidence because it was not produced by Liberty Mutual in response to discovery motions.

*1235 C. The letter of March 2, 1981 is inadmissible in evidence because it was not properly authenticated.
D. The letter of March 2, 1981 is inadmissible as hearsay evidence.
II. UPS did not validly reject uninsured motorists coverage in the State of Louisiana.
A. The letter of March 2, 1981 does not expressly reject UM coverage in the state of Louisiana.
B. The letter of March 2, 1981 was not signed by the named insured or its authorized legal representative as required by La.R.S. 22:1406(D)(1)(a).
C. The letter of March 2, 1981 does not ratify UPS' previous rejection of UM coverage in the state of Louisiana, because the previous rejection was void and can have no carry over effect.
III. Liberty Mutual is not entitled to recover monies paid to Donald Roger pursuant to the policy of workers' compensation insurance issued to UPS.
Upon re-examination of the record and reconsideration of the issue regarding admissibility of the 1981 letter, we are convinced that we were correct in our original holding. As we explained in our original opinion:
"La.R.S. 22:1406 D(1)(a) was amended by Act 438 of 1977, effective September 9, 1977, so as to eliminate the necessity for physical attachment of a rejection of UM coverage to the policy as previously required by La.R.S. 22:628. The amendment provides in pertinent part as follows:
`Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective or whether physically attached thereto.'"
Since the question before the court was: "Did UPS have UM coverage in Louisiana?", any evidence which would answer or aid in answering that question was most relevant. This would include, of course, the actual policy and any documents which purported to limit, expand or explain the policy. We find both the 1974 letter and the 1981 letter to be such documents.
Although under prior law, the 1974 letter was ineffective in rejecting UM coverage because it was not attached to UPS' policy, it was a positive indication by UPS that it desired to reject UM coverage in Louisiana. Had the 1974 letter been attached to the policy, it would have accomplished the desired result.
The letter of March 2, 1981 was also a clear indication by UPS that the company desired to reject UM coverage in every state where possible. This, of course, would include Louisiana. Following the 1977 amendment to R.S. 22:1406, there was no requirement that the required documentary evidence rejecting UM coverage in Louisiana be attached to the insured's policy. Even if, arguendo, one would assume that the 1981 letter standing alone was insufficient to reject UM coverage, when the policy (which shows no UM coverage in Louisiana) and the two letters (1974 and 1981 documents) are considered in pari materia, the only conclusion which can be reached is that UPS validly rejected UM coverage in this state. Further, we find without merit plaintiff-appellee's assertion that the March 2, 1981 letter could not serve to ratify the previous rejection of coverage. The 1974 letter clearly evidenced UPS' election to reject UM coverage in Louisiana. This letter and its contents, although ineffective under prior law to validly reject such coverage, is not, as plaintiff suggests, null and void.
Plaintiff next argues that, even if the 1981 letter was relevant, it was still properly excluded because (1) it was not produced by Liberty Mutual in response to discovery motions; (2) it was not properly authenticated; and, (3) it was hearsay evidence. These objections, however, were not raised at trial. In pleading his case on rehearing, able counsel for appellant states:

*1236 "It is readily conceded by counsel for plaintiff that no objection was made at trial to the lack of proper foundation and authentication of the letter. However, it is respectfully submitted that under the facts of this case, such an objection was not necessary. It was not necessary because the letter, unidentified and unauthenticated, is not competent evidence sufficient to meet Liberty Mutual's burden of proving a rejection of UM coverage. See Carr v. Williams, 145 So.2d 611 (La.App. 4th Cir.1962). And it was not necessary because under the circumstances of this case, the contemporaneous objection rule does not apply. The purpose of the contemporaneous objection rule is to allow the trial judge the opportunity to rule on a specific objection so that he may prevent or cure error. State v. Herrod, 412 So.2d 564 (La.1984 [1982]). The usual context in which the rule is applied occurrs, for example, where an objection is made to a document on one ground and that objection is overruled by the trial judge. If the document is also objectionable on other grounds then, under the contemporaneous objection rule, counsel is required to raise the other objections at trial to give the judge the opportunity to correct his evidentiary ruling. This prevents multiple trials and promotes judicial economy.
Where, however, as in this case, a document is objected to on one ground and that objection is sustained, it would appear that the contemporaneous objection rule does not apply. Indeed, the raising of consecutive objections after the first objection is sustained would serve only to delay the trial and may even serve the prejudicial function of having counsel object so strenuously that more attention is called to the excluded evidence than is due. Indeed, the purpose behind the contemporaneous objection rule in such a case is not violated, as the trial judge has already ruled in favor of the party and there is nothing in the trial court's mind to correct.
For this reason it is submitted that the contemporaneous objection rule does not bar this Court's consideration of grounds, other than those relied on by the trial judge, to sustain the trial court's evidentiary ruling, where those grounds are supported by the record."
We do not agree with appellant's argument. It is well settled that objections to evidence must be made at the time the evidence is offered and that failure to so object will be considered a waiver of such objections. Thibodeaux v. Western World Ins. Co., 391 So.2d 24 (La.App. 3rd Cir. 1980). The reason for the contemporaneous objection rule is not only to allow the trial judge the opportunity to rule on a specific objection, but also to allow opposing counsel an opportunity to answer and, if possible, cure such objection. We therefore conclude that plaintiff-appellee waived all objections to the introduction in evidence of the 1981 letter other than that of relevancy. Since we find the trial court's ruling in connection with this objection error, it follows that the letter is in evidence and can be considered.
Further, on appeal, plaintiff-appellee argued but one objection to the introduction of the March 2, 1981 letterirrelevancy.
"Our long settled jurisprudence is that any contention not urged on appeal, in either oral argument or in brief, is deemed waived and abandoned and will not be considered by the appellant court. Texas Co. v. Cooper, 236 La. 380, 107 So.2d 676 [1958]; Reimann v. New Orleans Public Service, 191 La. 1079, 187 So. 30 [1939]; State v. Owin, 191 La. 617, 186 So. 46 [1938]; Constantin Refining Co. v. Day, 147 La. 623, 85 So. 613 [1920]; LeDay v. New York Fire and Marine Underwriters, Inc., La. App., 203 So.2d 562 [1967]; Parish of Jefferson v. Bertucci Bros. Const. Co., La.App., 176 So.2d 688 [1965]; Tingle v. Rogers, La.App., 134 So.2d 110 [1961]; Boddie v. Morehouse Parish Police Jury, La.App., 91 So.2d 463 [1956]; Dowden *1237 v. State, La.App., 81 So.2d 48 [1955]; Pacific Finance Co. v. Granite State Fire Ins. Co., La.App., 45 So.2d 378 [1950]; Ingram v. State Farm Mut. Automobile Ins. Co., La.App., 35 So.2d 781 [1948]; Prejean v. Richard, La.App., 158 So. 693 [1935]; National Materials Co. v. Guest, La.App., 147 So. 771 [1933]. This rule is applicable to claims of unconstitutionality. Giamalva v. Cooper, 217 La. 979, 47 So.2d 790 [1950]; State ex rel. Chehardy v. New Orleans Parkway Commission, 215 La. 779, 41 So.2d 678 [1949]; State v. Banner Cleaners & Dyers, 170 La. 76, 127 So. 370 [1930].
In this case appellant's original and supplemental petitions in the trial court do allege the Commission's action was unconstitutional. But in this court it did not make such a contention. Both appellant's oral argument and its brief were and are devoid of any argument relative to unconstitutionality or of any mention thereof. Thus, the issue was not before us and a discussion of unconstitutionality would have been, and would now be, academic."
Churchill Farms, Inc. v. Louisiana Tax Commission, 249 So.2d 594 (La.App. 4th Cir.), writ denied, 259 La. 321, 249 So.2d 923 (1971). See also Troxler v. McFarlain, 308 So.2d 808 (La.App. 4th Cir.), writ denied, 314 So.2d 245 (La.1975); Prudhomme v. Nationwide Mut. Ins. Co., 465 So.2d 141 (La.App. 3rd Cir.1985), writ denied, and cases cited therein.
Accordingly, we find the issues raised by plaintiff-appellee for the first time on rehearing, not properly before the court and any discussion by us of those issues would be purely academic.
We next consider the assertion by UPS and Liberty Mutual that our original opinion failed to consider an issue raised by them on appeal.
In their application for rehearing, intervenors stated:
"After this Honorable Court decided the UM case in favor of Liberty Mutual, it went on to state that there is no need to discuss any of the remaining issues.
The undersigned counsel for Liberty Mutual Insurance Company and United Parcel Service, as workers' compensation intervenors, contends that there is one final decision which is left for resolution by this Honorable Court. It is undisputed that Donald Roger accepted $100,000.00 in settlement from Maryland Casualty Company, the liability carrier for the adverse-vehicle, and $15,000.00 in settlement from Maryland Casualty Company, the liability carrier for Pierce Enterprises, Inc., all without the consent of the workers' compensation insurer, Liberty Mutual Insurance Company. As this court is aware, the amendments to the Louisiana Workers' Compensation Statute were enacted in 1983 to require a defendant in a tort suit to obtain written approval of any compromise settlements with the employee and when such is not done, the defendant is required to reimburse the employer or his insurer to the extent of the total amount of compensation benefits or medical expenses paid. See R.S. 23:1102(c)."
Our re-examination of the record in this case discloses that we did consider all issues presented by intervenor-appellants on original appeal, which were not rendered moot as a result of our determination that Liberty Mutual did not provide UM coverage to UPS. For this reason, we conclude that we erred when we granted intervenor-appellants' application for rehearing and that the issue raised in that application is not properly before us and should not be considered.
On appeal, intervenors raised only the following issues:
1. Whether the trial court was clearly wrong in finding that the defendant, Pierce Enterprises, Inc. was not partially at fault in causing the accident?
2. If the defendant, Pierce Enterprises, Inc., is partially at fault in the accident, *1238 may Liberty Mutual Insurance Company, as compensation carrier recover its entire intervention under principles of solidarily liability?
3. Was the trial court clearly wrong in finding that Liberty Mutual, as compensation carrier was not entitled to recover the compensation and medical paid to or on behalf of Roger with preference and priority and out of Roger's judgment against Liberty Mutual Insurance Company, as UM carrier?
All of the foregoing issues were directly disposed of or rendered moot by the ultimate conclusions reached by us in our original opinion. Not only did Liberty Mutual and UPS fail to raise as an issue on appeal whether it was entitled to recover any monies out of plaintiff's settlements with Maryland Casualty, they, in effect, appeared to concede in their brief on appeal that they were not entitled to such recovery. In this connection, intervenor-appellants stated in their brief:
"... It is only by virtue of a technicality that the plaintiff was able to settle the original tort case against Mouton and Pierce Enterprises without including the compensation carrier. See Crabtree v. Bethlehem Steel Corporation, 284 So.2d 545 (La.1973). That is, Crabtree allowed plaintiffs to settle their claims and thereby leave the intervenors alone to try the cases alone. Of course, the law has since changed and now plaintiffs are unable to settle their tort claims without including the compensation intervenor. Roger then obtained the entire policy limits from the carrier for Mouton and then settled with the carrier for Pierce Enterprises, releasing over a quarter of a million dollars of insurance coverage. Now, after the compensation intervenor has lost the trial of the intervention, receiving no reimbursement from any defendant, the final insult is that it cannot even recover from the plaintiff's judgment, the compensation benefits it has paid."
The foregoing clearly shows that on appeal Liberty Mutual and UPS did not even entertain the idea that they had any right to recover any funds out of plaintiff's settlements. Now, for the first time, on rehearing, intervenor-appellants seek to make such a claim.
In keeping with our previous holding that those issues not raised on appeal are improperly before the court on rehearing (see Churchill Farms, supra, and supporting cases), we decline to address that issue.
Accordingly, for the reasons stated, our original opinion is reinstated and made the final judgment of this court. Plaintiff-appellee and intervenor-appellants are cast, in equal proportions, for the costs on rehearing.
ORIGINAL DECREE REINSTATED.
NOTES
[*] Judge Alferd A. Mansour of the 9th Judicial District Court participated in this decision Judge Pro Tempore of the Third Circuit Court of Appeal.
[1] The trial court dismissed Liberty's claim against the Succession of Tad Moulton but made no disposition in regard to Global. However, on appeal, appellant, Liberty, does not urge error in this action and/or inaction of the trial court.
[2] La.R.S. 32:141 states in pertinent part as follows:

"A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic."
[3] La.R.S. 32:368 states in pertinent part as follows:

"A. Whenever any freight carrying vehicle, passenger bus, truck tractor, trailer, semi-trailer, or any motor vehicle pulling a house trailer or other vehicle, is disabled upon the traveled portion of any highway of this state, or the shoulder thereof, at any time when lighted lamps are required on vehicles, the driver of such vehicle shall display the following warning devices upon the highway during the time the vehicle is so disabled on the highway except as provided in Subsection B of this Section:
(1) A lighted fuse, a lighted red electric lantern or a portable red emergency reflector shall be immediately placed at the traffic side of the vehicle in the direction of the nearest approaching traffic.
(2) As soon thereafter as possible, but in any event within the burning period of the fuse (15 minutes), the driver shall place three liquid burning flares (put torches), or three lighted red electric lanterns or three portable red emergency reflectors on the traveled portion of the highway in the following order:
(a) One, approximately 100 feet from the disabled vehicle in the center of the lane occupied by such vehicle and toward traffic approaching in that lane.
(b) One, approximately 100 feet in the opposite direction from the disabled vehicle and in the center of the traffic lane occupied by such vehicle.
(c) One at the traffic side of the disabled vehicle approximately 10 feet rearward or forward thereof in the direction of the nearest approaching traffic.
B. Whenever any vehicle referred to in this Section is disabled within 500 feet of a curve, hillcrest or other obstruction to view, the warning signal in that direction shall be placed as to afford ample warning to other users of the highway, but in no case less than 100 feet nor more than 500 feet from the disabled vehicle."
[4] Even if La.R.S. 32:141 were applicable, we would find no breach since the vehicle was disabled, parked off of the road, left its lights and flashers on, and was only there for 10 minutes before the accident occurred.